[No. G000263. Fourth Dist., Div. Three. Mar. 22, 1985.]

MARTHA PENNY WHITE, Plaintiff and Appellant, v.
COUNTY OF ORANGE, Defendant and Respondent.

**COUNSEL**

Paoli & Paoli and Sylvia L. Paoli for Plaintiff and Appellant.

Portigal, Hammerton & Allen and James P. Slack for Defendant and Respondent.

**OPINION**

**WALLIN, J.**—Plaintiff Martha Penny White appeals the granting of summary judgment in favor of defendant County of Orange. The issue presented is whether a governmental entity can be held liable for the intentional wrongs of an employee deputy sheriff while on duty.

Shortly after midnight on October 21, 1980, George Loudermilk, an Orange County deputy sheriff on patrol in a black and white unit, stopped an automobile driven by White. Without explanation, Loudermilk placed White in his patrol car and drove her to an isolated orange grove where he threatened to rape and murder her. He then drove White around for several hours in secluded areas of Irvine Ranch, all the while threatening her with rape and murder. Loudermilk returned White to her car after she promised to go out with him that weekend. Shortly after White drove away, Loudermilk stopped her again for the sole purpose of obtaining a "goodnight kiss."

White promptly complained to the appropriate authorities resulting in Loudermilk's arrest and conviction on felony counts of kidnaping and false

imprisonment. Following his conviction, White brought a civil action for damages against Loudermilk charging false imprisonment, assault and intentional infliction of emotional distress. She also sued the County of Orange (County) on the theory of respondeat superior. The County moved for summary judgment, claiming Loudermilk's actions were beyond the scope of employment as a matter of law. Although the County did not produce affidavits to support its position, the motion was granted.

I

On appeal, White first contends the trial court erred in granting the County's motion because the County did not file any declarations in support of the summary judgment motion. Code of Civil Procedure section 437c requires supporting declarations be filed in order to grant a summary judgment motion.[1] The County's failure to do so precludes consideration of their motion as one for summary judgment. (*Adohr Milk Farms, Inc.* v. *Love* (1967) 255 Cal.App.2d 366, 370, fn. 3 [63 Cal.Rptr. 123]; *Verreos* v. *City and County of San Francisco* (1976) 63 Cal.App.3d 86, 100 [133 Cal.Rptr. 649].)

However, "a motion by a defendant under section 437c of the Code of Civil Procedure necessarily includes a test of the sufficiency of the complaint . . . . Motions for summary judgment in such situations have otherwise been allowed as being in legal effect motions for judgment on the pleadings." (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483]; see also *Blanch* v. *Young* (1984) 152 Cal.App.3d 1016, 1019 [200 Cal.Rptr. 9].) Therefore, we treat this appeal as one from the granting of a motion for judgment on the pleadings.

Since a motion for judgment on the pleadings performs the same function as a general demurrer, the facts alleged in the complaint must be accepted as true for the purposes of review. ▪ ▪▪▪▪ (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 620-621 [200 Cal.Rptr. 440, 677 P.2d 846].)[2] ▪ Here, White's unverified complaint alleges the facts described above against Loudermilk and further alleges the County is vicariously liable. In granting the County's motion, the trial court implicitly accepted the County's position that it was not liable for the actions of Loudermilk. The County maintains these alleged actions represent a substantial

---

[1]Code of Civil Procedure section 437c states: "The motion *shall* be supported by affidavits, declarations . . . ." (Italics added.)

[2]Because we find the complaint sufficient to state a cause of action (*post*), we need not deal with the trial court's failure to allow White to amend the complaint. Leave to amend should be granted if the underlying facts would support a cause of action. (*Galligan* v. *City of San Bruno* (1982) 132 Cal.App.3d 869, 876 [183 Cal.Rptr. 466].)

deviation from Loudermilk's duties as a deputy sheriff and, therefore, were not within his scope of employment as a matter of law. Accepting the allegations against Loudermilk as true, we review the validity of the County's position.

II

■ Initially, we note that in governmental tort cases, "the rule is liability, immunity is the exception." (*Muskopf* v. *Corning Hospital District* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457].) This is so because "it would be unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss rather than distribute it throughout the community." (*Lipman* v. *Brisbane Elementary School District* (1961) 55 Cal.2d 224, 230 [11 Cal.Rptr. 97, 359 P.2d 465].) Therefore, "[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].)

■ The Legislature has not clearly provided for governmental immunity in the present situation. ■ On the contrary, Government Code section 815.2, subdivision (a) follows common law and imposes governmental liability for injuries proximately caused by acts of employees within the scope of employment.[3] ■ Therefore, in order to avoid vicarious liability, the County must show Loudermilk's actions were beyond the scope of his employment.

■ Scope of employment is normally a question of fact. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [159 Cal.Rptr. 835, 602 P.2d 755].) However, where only one conclusion is possible "and where there is no dispute over the operable, overt, observable facts, then the question logically becomes one of law." (*Golden West Broadcasters* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].) ■ Here, there is complete agreement as to what occurred during the early morning hours of October 21, 1980. Therefore, this appeal raises a question of law.

■ In *Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133 [176 Cal.Rptr. 287], the court addressed the liability of an employer school district for the rape of an 11-year-old student by an employee janitor. The court stated that whether a tort is committed during the course of em-

---

[3]Government Code section 815.2, subdivision (a) states: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

ployment turns on "'whether or not: (1) the act performed was either required or "incident to his duties" [citation] or (2) the employee's conduct could be reasonably foreseen by the employer in any event [citations].'" (*Id.*, at p. 139.) The court then held the school district was not liable because "the connection between the employee's duties and the employee's wrongful actions has become so attenuated that the law will not hold the employer vicariously liable. Sexual molestation is in no way related to mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian." (*Id.*, at pp. 139-140.)

Applying the *Alma W.* test to this case leads us to conclude the County will be liable for the actions of Officer Loudermilk should those actions be proven at trial. Our decision turns on the interpretation of the term "incident to his duties."

A police officer is entrusted with a great deal of authority. This authority distinguishes the situation here from the facts of *Alma W.* Unlike a school custodian, the police officer carries the authority of the law with him into the community. The officer is supplied with a conspicuous automobile, a badge and a gun to ensure immediate compliance with his directions. The officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them. Here, unlike *Alma W.*, the wrongful acts flowed from the very exercise of this authority.

It follows that the employer/government must be responsible for acts done during the exercise of this authority. In *Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503 [154 Cal.Rptr. 874], the court, quoting the Restatement Second of Agency, stated: "If the principal places the agent in a position to defraud, and the third person relies upon his apparent authority to make the representations, the principal is liable even though the agent was acting for his own purposes [citations]. The theory is that the agents' position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him. It is immaterial that the principal receives no benefits from the transaction. [Citation.]" (*Clark, supra,* 92 Cal.App.3d 503, 521, italics deleted.)

This reasoning directly addresses the situation presented here. White alleges she stopped solely because she was ordered to do so by a deputy sheriff. In other words, she relied on the officer's apparent authority. Had Loudermilk not been a deputy sheriff, in uniform, in a marked patrol vehicle using flashing red lights, White would not have stopped at his di-

rection and the events that followed would not have occurred. Because the County placed Loudermilk in this position of authority, it will be liable for his actions should White prove her allegations at trial.

The use of authority is incidental to the duties of a police officer. The County enjoys tremendous benefits from the public's respect for that authority. Therefore, it must suffer the consequences when the authority is abused.

Based on the foregoing, we hold White stated a valid cause of action for vicarious liability against the County; accordingly, the judgment is reversed. The case is returned to the trial court for adjudication on the merits. White is to receive her costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied April 15, 1985, and respondent's petition for review by the Supreme Court was denied June 20, 1985.