[No. B009259. Second Dist., Div. One. Dec. 18, 1986.]

RITA M. et al., Plaintiffs and Appellants, v.
ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES,
Defendant and Respondent.

1454

**COUNSEL**

Allred, Maroko, Goldberg & Ribakoff, Gloria Allred and John S. West for Plaintiffs and Appellants.

Morgan, Wenzel & McNicholas and John P. McNicholas for Defendant and Respondent.

**OPINION**

**WOODS, J.*—**

## I

### INTRODUCTION

Plaintiffs/appellants appeal from an order of the Los Angeles County Superior Court, dated November 16, 1984, sustaining the demurrer of

*Assigned by the Chairperson of the Judicial Council.

respondent, the Roman Catholic Archbishop of Los Angeles, a corporation, to plaintiffs' second amended complaint without leave to amend. Although a judgment of dismissal was not entered until November 20, 1986, the appeal is deemed proper and timely filed by this court.

## II

### FACTS

In appellants' verified "second amended complaint for civil conspiracy; for negligence; for fraud and deceit; for professional malpractice deceit; and for clergy malpractice," seven causes of action are alleged based upon facts pled which can be summarized as follows:

Appellants, Rita M. (a 16-year-old girl allegedly seduced by priests) and Rita's mother and father, were aggrieved when priests of the Roman Catholic Church, of the Archdiocese of Los Angeles, were alleged to have entered into a conspiracy to have sexual intercourse with Rita, caused her to become pregnant, and secreted her off to the Philippine Islands to have a baby, which resulted in Rita's neglect, malnutrition and illness. The Archbishop of the Archdiocese of Los Angeles, a corporation sole, is named as a defendant in each cause of action on the theory of respondeat superior.

A summary of the operative facts as gleaned from the verified "second amended complaint," which this court accepts as being properly pled and the facts therein deemed admitted by the demurrer, and thereby admitted for purposes of this appeal (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728]), is as follows: Rita was 16 years old, a devout Roman Catholic and attended the St. Philomena Church in Carson, California. She engaged in church activities and was desirous of becoming a nun.

Rita admired and respected her parish priests (Ta. and Cr.).[1] Both priests heard Rita's confessions.

While still 16, Rita received sexual advances from one of the priests which took the form of physical touching in the confessional booth and also in the home of a relative of the priest.

---

[1] The seven defendant priests are not parties to this appeal. Apparently, "service" was never perfected on the defendant priests. Respondent Archbishop is the only defendant involved in this appeal.

The parish priests, prior to the month of January 1980, formed a conspiracy with the objective of utilizing their positions as priests and their confidential relationship with Rita to entice her to have sexual intercourse with them and with other priests. The conspiracy was formed with the intent to undermine Rita's will by exercising undue influence over her, and to convince her to maintain complete silence with respect to the planned sexual activities. The conspiracy was furthered by the parish priests by persuading Rita to have sexual intercourse with them in the month of January 1980, accompanied by the admonishment to her not to tell anyone what had occurred.

Rita had sexual intercourse with the parish priests after having been told by them that the acts were ethically and religiously permissible.

During and after January of 1980, the parish priests had regular sexual intercourse with Rita. Then other priests (A. and Ca.) joined the conspiracy by having intercourse with Rita at a hotel. Other priests (L. and B.) joined the conspiracy and had intercourse with Rita and finally, a priest, by the name of Tu., joined the conspiracy by having intercourse with Rita.

The acts of sexual intercourse continued until March 1982, with Rita being admonished by the priests to maintain complete silence and secrecy.

In March of 1982, Rita became aware that she was pregnant. Parish priest, Ta., devised a plan in furtherance of the secrecy aspect of the conspiracy to secretly transport Rita to the home of his brother in the Phillipine Islands where she could have her baby in secrecy, and with the promise that the parish priest would send money to the Phillipines to aid Rita.

Priests Ca. and L. bought tickets for Rita to the Phillipines and arranged a passport. Rita's mother and father were told by Ta. that Rita was going to the Phillipines to study medicine.

In furtherance of the wishes of the conspirators, Rita went to the Phillipines in April of 1982, where she told Bishop A. that the father of her unborn child was a priest. A. told Rita to keep the secret and he would help her upon his return to Los Angeles in August 1983.

Rita spent seven months in the Phillipines, the defendant priests having sent less than $450 for her support. Rita became malnourished and ill. On October 12, 1982, the baby was born via caesarean section during which time Rita nearly died. Prior to the birth of the baby, the mother of Rita discovered Rita's predicament, rushed to the Phillipines to be by her daugh-

ter, and then brought Rita and the child back to California in November 1982.

The conspiracy continued in Los Angeles, when priest Ta. met with Rita and told her to remain silent. Rita then told the parish priests that an attorney had been consulted and that she planned to talk to the bishop of the church about priest Tu., whom Rita suspected to be the father of her baby. In July 1983, Rita met with priest Ta. and Tu. who again asked her to remain silent.

In October of 1983, Rita met with priest Cr. who expressed a desire to have sexual relations with Rita in an apartment.

Finally, in December of 1983, priest Ta. told Rita not to reveal the full extent of the sexual activities to her parents who were not yet aware of the extent of Rita's sexual involvement with the various priests. During the month of July 1983, Rita and priest Cr. met with Bishop W. of the Roman Catholic Church in Los Angeles. Rita told Bishop W. that a priest had fathered her child and she gave to the bishop the name of several priests that were suspect. Following a promise to investigate, in October of 1983, Bishop W. told Rita there was nothing he could do for her.

At this point, Rita lost faith in the Catholic Church and filed her original complaint in the Los Angeles County Superior Court on February 8, 1984. Her faith in the Catholic Church prevented Rita from bringing suit at an earlier date.

The minute order of November 16, 1984, indicates that Judge John L. Cole sustained respondents' demurrer to all causes of action without leave to amend as follows:

1. To the first, third and sixth causes of action against respondent on the grounds of the bar of the one-year statute of limitations, pursuant to Code of Civil Procedure section 340, subdivision (3);

2. To the second, fourth and fifth causes of action against respondent since no causes of action for fraud were stated against respondent;

3. The seventh cause of action was stricken on the court's own motion for failure to state a cause of action.

III

Issues on Appeal

The appellant raises the following issues on appeal:

1. The superior court erred as a matter of law in ruling that the statute of limitations barred the first cause of action of appellant, Rita, for civil conspiracy against all defendants since the acts of the priests were all in furtherance of a single, continuous conspiracy; that Rita's awareness of sexual activity between herself and the defendant priest did not start the running of the statute of limitations; and that Rita's consultation with an attorney in May of 1983 did not terminate the conspiracy or stop the running of the statute of limitations.

2. The superior court erred as a matter of law in ruling that the second, fourth and fifth causes of action (fraud and deceit)[2] failed to state causes of action upon which the Archbishop could be held liable for fraud and deceit in that the respondent Archbishop, as a principal, placed his agent-priests in a position to commit fraud against Rita and her parents while the priests acted within the course and scope of the agency; that the fraud was foreseeable; and the Archbishop ratified the fraud after the fact.

3. The superior court erred as a matter of law in ruling that the statute of limitations barred the third and sixth causes of action[3] (professional malpractice and negligence), in that defendant priests and the Archbishop stood in a fiduciary relationship with appellants, thereby tolling the statute of limitations until appellants discovered, or should have discovered, the material facts.

4. The superior court erred as a matter of law in ruling that the seventh cause of action (professional malpractice), of the parents of Rita against all defendants, be stricken for failure to state facts sufficient to constitute a cause of action in that, contrary to the court's reasoning, a professional relationship did exist between the parents of Rita and priest Ta. (and presumably against the Archbishop as the employer of Ta.), since Ta. and his coconspirators fraudulently deceived the parents into permitting their daughter to accompany priests for sexual purposes and by permitting Rita to go to the Phillipines.

---

[2]Second cause of action was pled by Rita against all defendants. Fourth cause of action was pled by Rita's parents against defendants Ta., Cr. and the Archdiocese. Fifth cause of action was pled by Rita's parents against defendants Ta. and the Archdiocese.

[3]Third cause of action was pled by Rita against all defendants. Sixth cause of action was pled by all plaintiffs against the Archbishop.

## IV

### DISCUSSION

■ Each of the seven causes of action contained in plaintiffs second amended complaint is governed by the one-year statute of limitations contained in Code of Civil Procedure section 340, subdivision (3). The one-year limitation period specified in section 340, subdivision (3) embraces not only bodily injuries but all infringements of personal rights as opposed to property rights. (*Edwards* v. *Fresno Community Hospital* (1974) 38 Cal.App.3d 702, 704, 705 [113 Cal.Rptr. 579, 3 A.L.R.4th 1209].)

Rita alleges, in her first cause of action for civil conspiracy (resulting in a wrong to Rita on a theory of intentional infliction of emotional distress), that the sexual experiences with the defendant priests began in January 1980 and continued through March 1982. In her second cause of action, Rita complains of physical injury occurring prior to and during the birth of her child in October 1982. None of the remaining causes of action allege injurious conduct to any of the appellants at any later point in time. ■ Since the original complaint was not filed until February 8, 1984, all causes of action in the complaint are barred by the provisions of Code of Civil Procedure section 340, subdivision (3) unless appellants can find a theory to delay or toll the running of the one-year statute of limitations.

Appellants argue that the conspiracy allegations contained in the second amended complaint enabled them to avoid the bar of the statute of limitations since the object of the conspiracy was to maintain secrecy regarding the sexual relations with the priests; that one of the priests urged, as late as December 1983, that the matters be kept secret; that the requests for silence by the priests were "overt acts" in furtherance of the conspiracy; that the complaint was timely filed within one year of this final overt act of the conspiracy.

Appellants, however, underplay or ignore the fact that Rita was on notice of her claims by virtue of the fact that Rita participated in the object of the conspiracy, and that she was told by the priests, as alleged by her, to keep silent. As one court stated:

"[W]e pause to note an obvious, albeit often overlooked, proposition. The doctrine of fraudulent concealment [for tolling the statute of limitations] does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." (*Hobson* v. *Wilson* (D.C. Cir. 1984) 737 F.2d 1, 35, cert. denied (1985) 105 S.Ct. 1843.)

Here, not only was Rita at all times aware of the relevant facts, but the efforts of the individual defendants to have her keep silent failed at the latest while she was in the Phillipine Islands having her baby. Rita alleges that her mother discovered the facts and came to the Phillipines to assist her. A conspiracy to keep silent could not affect the statute of limitations on Rita's claims even if the efforts to maintain silence had been effectual. Rita was clearly placed on notice of the potential claims as of October 12, 1982, at the latest, the day the baby was born by caesarean section.

Appellants next attempt to charge the respondent Archbishop with the alleged conduct of the individual defendant-priests by invoking the doctrine of respondeat superior.

An employer may be held responsible for tortious conduct by an employee only if the tort is committed within the course and scope of employment. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676].) Analytically, the question of whether a tort is committed within the course of employment turns on whether (1) the act performed was either required or instant to the employee's duties or (2) the employee's misconduct could be reasonably foreseen as an outgrowth of the employee's duties. (*Martinez* v. *Hagopian* (1986) 182 Cal.App.3d 1223, 1228, 1229 [227 Cal.Rptr. 763].)

Plaintiffs could not seriously contend that sexual relations with parishioners are either required by or instant to a priest's duties, so they are left with the foreseeability test. The question, however, is whether sexual relations between a parishioner and seven priests is foreseeable, not in an omniscient way, but in the relevant sense.

In *Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133 [176 Cal.Rptr. 287], the court stated in holding that a school district could not be held liable for the act of a janitor in molesting one of the students under the doctrine of respondeat superior, that mere foreseeability was not enough. The foreseeable event must be characteristic of the activities of the enterprise. The court had no difficulty concluding that the janitor's acts, even if broadly foreseeable, were not in any way characteristic of the school district's enterprise. This court sees no difference in the rationale in *Alma W.* to the facts of this case. It would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop of the Roman Catholic Church. There is simply no basis for imputing liability for the alleged conduct of the individual defendant-priests in this instance to the respondent Archbishop. Similarly, appellant has not pointed out any fact which could lead this court to a conclusion that the Archbishop "ratified" the concupiscent acts of the priests.

■ In the seventh cause of action, the parents of Rita claimed damages against all defendants based upon conduct involving their daughter, Rita. The claims of Rita's parents do not fall within one of the few exceptions to the general rule that the law does not allow one person to claim damages based upon conduct which damages a third person. The conduct accounting for all of the alleged damage to the parents is the alleged sexual involvement between the individual defendant-priest and their daughter, Rita. It is clear that there is no longer a cause of action for seduction of one's child in the State of California. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 374, p. 2627.) Appellants' attempt to resurrect this cause of action in another guise runs afoul of direct Supreme Court authority disapproving such derivative claims. Likewise, a parent cannot sue for loss of a child's affection and society. (*Baxter* v. *Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563 P.2d 871].) Similarly, even where a person witnesses conduct directed towards a third person, he or she may not sue for any emotional distress except in the most extreme cases of violent attack, where there is some special likelihood of fright or shock. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1].)

V

DISPOSITION

The order of the superior court is affirmed.

Spencer, P. J., and Devich, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 4, 1987.