[No. G004405. Fourth Dist., Div. Three. Jan. 7, 1988.]

JEFFREY E., a Minor, etc., Plaintiff and Appellant, v.
CENTRAL BAPTIST CHURCH, Defendant and Respondent.

COUNSEL

Michael L. Luboviski for Plaintiff and Appellant.

Cooksey, Howard, Martin & Toolen and Robert L. Toolen for Defendant and Respondent.

OPINION

**SONENSHINE, J.**—Jeffrey E. appeals the judgment entered upon the granting of Central Baptist Church's motion for summary judgment pursuant to Code of Civil Procedure section 437c. The sole issue raised is whether a church is liable for repeated acts of sexual assault on a minor perpetrated by a Sunday school teacher and general church member.

I

Ernest Schwobeda became a member of Central Baptist Church (CBC) in 1964 and a regular Sunday school teacher in 1967. He also participated in an organized Thursday evening program of visitation designed to enlarge CBC's membership. He was not compensated for any of these activities.

Jeffrey E. first attended CBC's Sunday school classes at the age of five, but Schwobeda was not his teacher until Jeffrey entered second grade. Sometime thereafter, Schwobeda began picking Jeffrey up at his home on Thursday evenings. Schwobeda told Jeffrey's mother the boy was "his eyes" at night and helped him find the homes he was to visit. Jeffrey was also frequently with Schwobeda on Sunday mornings and evenings.[1] Schwobeda occasionally called for Jeffrey on Saturdays to do yard work or other errands. The Saturday outings were unrelated to CBC activities.

---

[1] Schwobeda picked Jeffrey up early Sunday morning, brought him home around 1 p.m., and picked him up at 6:25 p.m. on Sunday evening, returning him home after service around 9 p.m.

The relationship continued for two years.[2] Mrs. E. had no suspicion her son was being sexually abused. In fact, she felt Schwobeda was a perfect man and idealized him. She encouraged the relationship due to Jeffrey's father's illness. She felt Schwobeda was fulfilling the role of "second father" for Jeffrey.

In 1984, Schwobeda was arrested and charged with 47 felony counts of child molestation. After Schwobeda pled guilty to the nine counts involving Jeffrey, the underlying civil complaint for assault and battery and intentional infliction of emotional distress was filed.[3] CBC moved for summary judgment claiming Schwobeda's actions were not reasonably foreseeable by CBC, Schwobeda had no ostensible authority or agency to commit the acts upon Jeffrey, and the acts were independent, self-serving pursuits unrelated to Schwobeda's duties as a church member or Sunday school teacher. The parties stipulated the facts were not in dispute. The trial court ruled there was no triable issue of material fact and granted CBC's motion for summary judgment.[4]

## II

■ Under the doctrine of respondeat superior, an employer is liable for the torts of employees committed within the scope of employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755]; *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960 [88 Cal.Rptr. 188, 471 P.2d 988].) "The determination as to whether an employee committed a tort during the course of his employment turns on whether '1) the act performed was either required or "incident to his duties" . . . , or 2) the employee's misconduct could be reasonably foreseen by the employer in any event. . . .' [Citation.]" (*Martinez* v. *Hagopian* (1986) 182 Cal.App.3d 1223, 1228 [227 Cal.Rptr. 763].) ■ If the employee substantially deviates from the employment duties for personal purposes, the employer is not vicariously liable.[5] (*Hinman* v. *Westinghouse*

---

[2] Schwobeda was Jeffrey's Sunday school teacher only during the second grade.

[3] It appears service was not perfected on Schwobeda. He did not participate below and is not a party to this appeal.

[4] In his points and authorities in opposition to CBC's motion for summary judgment, Jeffrey "concede[d] . . . that where, as here, the material facts are not disputed, the question of whether an employee or agent's wrongful act falls within the scope of employment or agency is a question of law."

[5] The Restatement Second of Agency section 228 outlines the test for determining what conduct may be within the scope of employment: "(1) Conduct of a servant is within the scope of employment if, but only if: [¶] (a) it is of the kind he is employed to perform; [¶] (b) it occurs substantially within the authorized time and space limits; [¶] (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. [¶] (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the

*Elec. Co., supra,* 2 Cal.3d at p. 960.) ■ "The burden of proof is on the plaintiff to demonstrate that the negligent act was committed within the scope of employment. [Citations.]" (*Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d at p. 721.) ■ Scope of employment is normally a question of fact. However, "where there is no dispute over the operable, overt, observable facts, then the question logically becomes one of law." (*Golden West Broadcasters, Inc.* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].)

■ ■ ■ ■ ■ We must therefore decide whether Schwobeda's activities were within the scope of his employment.[6] ■ Certainly Schwobeda was not employed to molest young boys.[7] There is no evidence the acts occurred during Sunday school. And the record indicates there was always at least one other adult present during the Sunday school classes. Only one of the acts to which Schwobeda pled guilty occurred on a Thursday,[8] but we do not know whether this was during a visitation period. There is no evidence to suggest Schwobeda's conduct was actuated by a purpose to serve CBC. Rather, the acts were independent, self-serving pursuits unrelated to church activities. Finally, Schwobeda's acts of sexual molestation were not foreseeable "*in light of the duties* [he was] hired to perform." (*Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 142 [176 Cal.Rptr. 287].) "There is no aspect of a [Sunday school teacher's or member's] duties that would make sexual assault anything other than highly unusual and very startling." (*Id.,* at p. 143.) We conclude Schwobeda's acts against Jeffrey were neither required, incidental to his duties, nor foreseeable. They were, therefore, not within the scope of his employment.

■ Jeffrey attempts to bring Schwobeda's conduct within the responde-at superior doctrine by arguing CBC placed Schwobeda in a position of trust equal to the position of authority of the deputy sheriff in *White* v. *County of Orange* (1985) 166 Cal.App.3d 566 [212 Cal.Rptr. 493]. His

---

master." Applying either the Restatement definition or the test enunciated in *Martinez* v. *Hagopian, supra,* to the present facts, the result is the same.

[6] The rule's applicability is the same for both unpaid volunteers and paid employees. (*Malloy* v. *Fong* (1951) 37 Cal.2d 356 [232 P.2d 241]; *Leno* v. *Young Men's Christian Assn.* (1971) 17 Cal.App.3d 651 [95 Cal.Rptr. 96].)

[7] The parties apparently stipulated in the trial court that CBC had the right to control the activities of Schwobeda as a Sunday school teacher and as a general church member participating in visitation. CBC's response asserted Schwobeda had neither actual nor apparent authority to order Jeffrey to go on visitation trips without the parent's consent. However, CBC never denied it had the right to control Schwobeda's activities at Sunday school or on visitations. Instead, it asserted the sexual acts were neither incident to Schwobeda's duties as a Sunday school teacher nor foreseeable.

[8] Of the nine counts of molestation involving Jeffrey, to which Schwobeda pled guilty, only one provided a specific date, i.e., June 14, 1984. We judicially notice June 14, 1984, is a Thursday. The other counts merely set forth a month and year, e.g., March 1984.

reliance on that decision is misplaced. In *White,* we were not called upon to decide if a sexual assault was within the scope of employment of a deputy sheriff.[9]

Rather, applying the test set forth in *Alma W. v. Oakland Unified School Dist., supra,* 123 Cal.App.3d at page 139, we determined the wrongful acts flowed from the very exercise of the authority which was an integral part of a deputy sheriff's duties.

"A police officer is entrusted with a great deal of authority. This authority distinguishes the situation here from the facts of *Alma W.* Unlike a school custodian, the police officer carries the authority of the law with him into the community. The officer is supplied with a conspicuous automobile, a badge and a gun to ensure immediate compliance with his directions. The officer's method of dealing with this authority is certainly incidental to his duties; indeed, it is an integral part of them." (*White v. County of Orange, supra,* 166 Cal.App.3d 566, 571.) We are not persuaded *White's* "use of authority" should be expanded to include "position of trust."

The distinguishing feature in *White* is that the errant conduct arose out of an abuse of the employee's *official* authority. By virtue of the exercise of this authority, the police officer was able to perpetrate his assault. The focus is not on whether the police officer's activity is either characteristic or foreseeable, but rather on whether the assault arose out of the exercise of job-created authority over the plaintiff. That situation is not present here.

There was not an abuse of authority which had been established by reason of a special relationship created by CBC. Schwobeda's "position of trust" developed not because he was Jeffrey's Sunday school teacher or because he was a member of CBC's congregation. Rather, it flourished through numerous other contacts sanctioned by Jeffrey's mother. And it is undisputed that none of the acts occurred on CBC property or during Sunday school. It is also undisputed children were not a part of visitation; *that* was an adult function. Schwobeda's actions in taking Jeffrey along during visitations were outside the scope of his authority as established by CBC. Finally, it was not asserted in the complaint that any of the acts of molestation actually occurred during any of the times Schwobeda took Jeffrey on visitation.

The facts of the instant case fall more closely in line with those of *Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453 [232 Cal.Rptr.

---

[9] Appellant incorrectly assumes the conduct in *White* involved a sexual assault. There, shortly after midnight, an Orange County deputy sheriff on patrol in a marked sheriff's unit stopped a vehicle driven by White. He placed White in his patrol car and, during the several hours he drove her around, threatened to rape and murder her. However, there were no sexual acts committed by the deputy.

685]. In *Rita M.,* the plaintiff, a 16-year-old girl, was allegedly seduced by seven priests of the Roman Catholic Church of the Archdiocese of Los Angeles. Two of these priests had heard the girl's confessions and were admired and respected by her. They utilized their positions as priests and their confidential relationship with the girl to entice her to have sexual intercourse with them and other priests. They told her the sexual acts were ethically and religiously permissible. As a result of the priests' actions, the girl became pregnant and was secreted to the Philippine Islands to give birth. She was neglected there and became ill and malnourished. A civil action followed and the Archbishop of the Los Angeles Archdiocese was named a defendant on the theory of respondeat superior.

After discussing *Alma W. v. Oakland Unified School Dist., supra,* 123 Cal.App.3d 133, the *Milla* court concluded: "It would defy every notion of logic and fairness to say that sexual activity between a priest and a parishioner is characteristic of the Archbishop of the Roman Catholic Church. There is simply no basis for imputing liability for the alleged conduct of the individual defendant-priests in this instance to the respondent Archbishop. Similarly, appellant has not pointed out any fact which could lead this court to a conclusion that the Archbishop 'ratified' the concupiscent acts of the priests." (*Rita M. v. Roman Catholic Archbishop, supra,* 187 Cal.App.3d at p. 1461.)

We find no basis for distinguishing a Catholic priest from a Protestant Sunday school teacher. CBC is not liable under the theory of respondeat superior for the sexual molestion of Jeffrey E. because "the connection between [Schwobeda's] duties and [his] wrongful action has become so attenuated that the law will not hold the employer vicariously liable. Sexual molestation is in no way related to [teaching Sunday school, or to going on church-sponsored visitations], or any of the other tasks that are required of a [church Sunday school teacher or member]." (*Alma W. v. Oakland Unified School Dist., supra,* 123 Cal.App.3d at pp. 139-140.)

Judgment affirmed. Respondent to receive costs.

Wallin, Acting P. J., and Crosby, J., concurred.