Lori **TAYLOR**, Plaintiff,

v.

**BETH EDEN BAPTIST CHURCH,**
**et al., Defendants.**

**No. C–03–0685 JCS.**

United States District Court,
N.D. California.

Aug. 5, 2003.

Nonpayment Notice, survives the motion.

Pamela Y. Price, A Professional Law Corporation, Oakland, CA, for Plaintiff.

Gary L. Hall, Law Offices of Gary L. Hall, Kevin G. Howard, Roseville, CA, Jerome M. Varanini, Esq., Trimble Sherinian & Varanini, Sacramento, CA, for Defendants.

**ORDER GRANTING MOTION TO DISMISS AS TO DEFENDANT BETH EDEN BAPTIST CHURCH AND GRANTING IN PART AND DENYING IN PART AS TO DEFENDANT GILLETTE JAMES [Docket Nos. 5 and 7]**

SPERO, United States Magistrate Judge.

## I. INTRODUCTION

In this action, Plaintiff Lori Taylor brings sex discrimination, harassment and retaliation claims against Defendant Beth Eden Baptist Church ("Beth Eden") and its pastor, Defendant Gillette James. Beth Eden filed a Motion to Dismiss ("the Motion"), and James filed a Notice of Joinder in the Motion. Taylor filed a Statement of Non–Opposition as to Beth Eden but opposed the Motion as to James. The

Motion came on for hearing on Friday, August 1, 2003 at 9:30 a.m. The Court GRANTS the Motion as to Beth Eden on the ground that it is unopposed. Accordingly, Claims Four, Six and Nine are dismissed with prejudice as to Beth Eden. As to James, the Court GRANTS the Motion as to Claims Six and Nine, which are dismissed with prejudice, and DENIES the Motion as to Claim Four, for the reasons stated below.[1]

## II. BACKGROUND

### A. Facts

Plaintiff Lori Taylor worked as Beth Eden's Youth and Young Adult Minister from July 2001 to November 2002. First Amended Complaint (hereinafter "FAC") at ¶¶ 3, 8, 10. In addition, Taylor has been a member of Beth Eden and has attended services regularly since January 14, 1990. *Id.* at ¶ 7. At the time of the relevant events, James was employed as the pastor of Beth Eden. *Id.* at ¶ 5. Although Taylor does not allege explicitly in her complaint that James was her supervisor, the job description for Taylor's position that was attached to her original complaint states that the Youth and Young Adult Minister is directly accountable to the Pastor. Exh. A to FAC (Youth and Young Adult Minister's Job Specification).

Taylor alleges that on February 19, 2002, Taylor went to James's "private study for private and personal counseling." *Id.* at ¶ 9. According to Taylor, as she was leaving his study, James "abruptly left his desk, rushed over to her and physically grabbed her" and then "pulled Taylor to him in a very personal and sexually provocative manner." *Id.* Taylor alleges that she "pulled herself from his grasp and ran from his study." *Id.*

---

1. The parties have consented to the jurisdiction of a United States Magistrate judge for all purposes. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 636(e).

Plaintiff alleges that she was "extremely disturbed" by this incident. *Id.* at ¶ 10. On May 2, 2002, Taylor took a leave of absence at the recommendation of her doctor and filed for Workers Compensation benefits. *Id.* In September 2002, Taylor was approved to receive Workers Compensation benefits. *Id.* Taylor alleges that she "did not abandon her position with the Church." *Id.* at ¶ 11. According to Taylor, she received a letter regarding her employment from Beth Eden's personnel committee on September 27, 2002.[2] *Id.* In addition, a letter from the personnel committee to Taylor's doctor dated October 21, 2002 stated that "until Taylor returned as the Youth Minister, the Personnel Chairperson would recommend to the Personnel Committee that an interim person serve in her position." *Id.*

On "the first Sunday of November 2002, Taylor went to Beth Eden to worship as usual." *Id.* at ¶ 12. According to Taylor, when she returned to her car, she found "a document on her car referring to the Pastor's history of infidelities and predatory exploitation of female petitioners." *Id.* Taylor further alleges that "[a]s a result of [her] complaints about Defendant [James'] inappropriate sexual advances toward her and other female parishioners, Defendant [James] and Beth Eden slandered her reputation, filed and served a request for a Temporary Restraining Order prohibiting her from entering the Church, and subjected her to undue criticism and ridicule from other Church members." *Id.* at ¶ 14.

On March 1, 2002, Taylor filed a claim with the California Department of Fair Housing and Employment (DFEH) with a request for joint filing with the Equal Employment Opportunity Commission (EEOC). *Id.* at ¶ 15. A Notice of Right to Sue was issued by the DFEH on February 12, 2003 and by the EEOC on February 13, 2003. *Id.*

## B. *Procedural Background*

Taylor filed a Complaint on February 18, 2003 and her First Amended Complaint on May 27, 2003. In her First Amended Complaint, Taylor asserts the following claims:

1. *Claim One:* Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*

2. *Claim Two:* Unlawful retaliation in violation of 42 U.S.C. § 1981(a).

3. *Claim Three:* Intentional infliction of emotional distress.

4. *Claim Four:* Negligent infliction of emotional distress.

5. *Claim Five:* Unlawful denial of employment in violation of California Constitution Article I, Section 8.

6. *Claim Six:* Sex discrimination in violation of California Fair Employment and Housing Act (FEHA), Cal. Gov.Code §§ 12900 *et seq.*

7. *Claim Seven:* Sexual harassment in violation of California Civil Code § 51.9.

8. *Claim Eight:* Sexual battery in violation of California Civil Code § 1708.5.

9. *Claim Nine:* Retaliation in violation of California Fair Employment and Housing Act (FEHA), Cal. Gov.Code §§ 12900 *et seq.*

Defendant Beth Eden filed a Motion to Dismiss on June 20, 2002. In the Motion, Beth Eden seeks dismissal of Taylor's Fourth, Sixth and Ninth Claims. Beth Eden argues that Claim Four, for negli-

---

**2.** Taylor's First Amended Complaint does not allege any specific facts as to the content of this letter.

gent infliction of emotional distress, is barred under California Labor Code § 3602 because Workers Compensation benefits provide the exclusive remedy for Taylor's injury. Beth Eden argues that Claims Six and Nine—for discrimination and retaliation in violation of FEHA—are barred because of FEHA's exemption for religious entities.

James filed a Notice of Joinder in Beth Eden's Motion and also filed a separate memorandum of points and authorities. James seeks dismissal of the same three claims, and relies on essentially the same legal arguments in support of dismissal of those claims. In addition, he argues that to the extent Plaintiff is asserting a claim for defamation in her First Amended Complaint, that claim should be dismissed for failure to state a claim.

In response to the Motion, Taylor filed a statement of non-opposition as to Beth Eden and a separate opposition brief as to James. In her opposition, Taylor makes the following arguments. With respect to Claim Four, for negligent infliction of emotional distress, Plaintiff argues that the exclusive remedy provision of California Labor Code § 3602 exempts employers from civil liability but does not exempt employees. Similarly, as to Claims Six and Nine, Taylor argues that the exemption for religious entities under FEHA does not extend to individual supervisors, who are not themselves employers. Taylor stipulated that she is not asserting a claim for defamation.

In his Reply, James concedes that California Labor Code § 3602 does not apply to employees, but argues that Claim Four is, nonetheless, barred as to James under California Labor Code § 3601. Section 3601 addresses Workers Compensation exclusivity as to claims against fellow employees. In addition, James argues that all of Taylor's FEHA claims are barred as to James because it would make no sense

to exempt religious entities from FEHA without also making employees of such entities exempt.

## III. ANALYSIS

### A. Legal Standard

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that a plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987)(quoting *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Id.* The district court generally may not consider matters outside the pleadings on a motion to dismiss. *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Id.*

### B. Claim Four (Negligent Infliction of Emotional Distress)

██ Beth Eden argued in its Motion that Taylor's claim for negligent infliction of emotional distress must be dismissed because, under California Labor Code § 3602, the Workers Compensation scheme provides the exclusive remedy for Taylor's injury. James also relied on § 3602 in his memorandum in support of the Motion. However, in his Reply brief, he concedes that § 3602 does not apply to him. Instead, he argues that Claim Four is barred under California Labor Code § 3601. The Court agrees that § 3601 is the relevant provision, but concludes that that provision does not make the Workers Compensation remedy exclusive with respect to Taylor's claim for negligent inflic-

tion of emotional distress against James as currently pled.

Section 3601 provides, in part, as follows:

(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment, except that an employee, or his or her dependents in the event of his or her death, shall, in addition to the right to compensation against the employer, have a right to bring an action at law for damages against the other employee, as if this division did not apply, in either of the following cases:

(1) When the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee.

(2) When the injury or death is proximately caused by the intoxication of the other employee.

Cal. Labor Code § 3601(a). Thus, under § 3601, the Workers Compensation scheme provides an exclusive remedy vis-a-vis James only if James was acting "within the scope of his ... employment" when he committed the acts alleged in the First Amended Complaint. Based on Plaintiff's allegations, the Court concludes that James was *not* acting within the scope of his employment.[3]

 The test for determining whether conduct is in the "scope of employment" for the purposes of § 3601 is the same test as is applied to determine whether or not an employer should be held vicariously liable for an employee's conduct under the doctrine of *respondeat superior. Hendy v. Losse,* 54 Cal.3d 723, 740, 1 Cal.Rptr.2d 543, 819 P.2d 1 (1991)(holding that "[t]he words 'acting within the scope of his employment' should be construed in light of the purpose of the section, so as not to extend immunity beyond *respondeat superior* situations"). Under this test, conduct is within the scope of employment "only if the servant is actuated to some extent by an intent to serve his master." *Id.* (quoting *Saala v. McFarland,* 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400 (1965)). In the context of vicarious liability, California courts have held under a variety of circumstances that sexual misconduct falls outside of the scope of employment. *See, e.g. Farmers Ins. Group v. County of Santa Clara,* 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440 (1995)(holding that the County could not be held vicariously liable for sexual harassment by a deputy sheriff who worked at jail, even though harassment occurred during work hours at the jail, because the misconduct was "motivated for strictly personal reasons unrelated to the guarding of inmates or the performance of any other duty"); *Jeffrey E. v. Central Baptist Church,* 197 Cal.App.3d 718, 243 Cal.Rptr. 128 (1988) (holding that church could not be held vicariously liable for sexual molestation of child by Sunday school teacher because the acts were "neither required, incidental to his duties, nor foreseeable"); Rita *M. v. Roman Catholic Archbishop of Los Angeles,* 187 Cal.App.3d 1453, 232 Cal.Rptr. 685 (1986) (holding that church could not be held vicariously liable for sexual molestation of child by priests).

A closely related line of cases addressing California Labor Code § 3602 supports the

---

**3.** It is also likely that the exception contained in subsection (a)(1) applies to Taylor's claim, to the extent that her emotional distress was caused, in part, by an alleged "willful and unprovoked physical act of aggression" on the part of James. The Court does not reach this issue.

conclusion that acts of discrimination and harassment fall outside of the scope of employment. In particular, California courts have held that exclusivity under § 3602 applies only to conduct that is a normal risk of the employment relationship. *See Livitsanos v. Superior Court*, 2 Cal.4th 744, 756, 7 Cal.Rptr.2d 808, 828 P.2d 1195 (1992). Based on this rule, a number of California courts have found that discrimination and harassment are not part of the normal risks of employment and therefore, exclusivity does not apply to claims against employers that are based on such conduct. *See Yanowitz v. L'Oreal USA, Inc.*, 131 Cal.Rptr.2d 575 (2003) (holding that exclusivity did not apply to claim for negligent infliction of emotional distress against employer based on allegation that employer had retaliated against plaintiff for refusing to fire female sales associate who plaintiff's supervisor thought was unattractive); *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1491–92, 82 Cal.Rptr.2d 359 (1999) (holding that work-related injury discrimination is not a normal risk of the compensation bargain and therefore, claims for negligent and intentional infliction of emotional distress against employer were not barred by exclusivity rule); *Accardi v. The Superior Court*, 17 Cal.App.4th 341, 21 Cal.Rptr.2d 292 (1993)(holding that claim for intentional infliction of emotional distress against employer based on alleged harassment was not barred by the exclusivity rule because sexual harassment was "outside the normal employment environment").

The cases discussed above support the conclusion that Taylor has alleged facts which, if true, would establish that James was acting outside the course and scope of employment for the purposes of § 3601. Therefore, the Court concludes that Taylor's claim for negligent infliction of emotional distress is sufficient to survive the Motion as to James.

### C. Claims Six and Nine (Discrimination, Harassment and Retaliation under FEHA)

Plaintiff alleges two claims against James under FEHA: 1) Claim Six, which, although labeled as a claim for discrimination, includes allegations of both discrimination and harassment;[4] and 2) Claim Nine, for retaliation. James challenges these claims, arguing that because FEHA exempts Beth Eden from liability, he too must be exempt from liability. Below, the Court addresses each of the three theories of liability alleged—discrimination, harassment, and retaliation—to determine whether any of them can give rise to individual liability on the part of Defendant James. The Court concludes that they cannot.

#### 1. Discrimination

■ Under FEHA, liability for discrimination is addressed in § 12940(a). Section 12940(a) provides that is unlawful:

For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status,

---

**4.** Both FEHA and case law interpreting that statute have drawn a distinction between discrimination claims and harassment claims. *See Janken v. GM Hughes Electronics*, 46 Cal. App.4th 55, 62, 53 Cal.Rptr.2d 741 (1996). As the Court explained in *Janken*, "the Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type

of conduct not necessary to a supervisor's job performance, and business or personnel management decisions—which might later be considered discriminatory—as inherently necessary to performance of a supervisor's job." *Id.* Accordingly, the Court addresses discrimination and harassment separately in this Order.

sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov.Code § 12940(a). In addition, § 12940(i) makes it unlawful for "any person ... to aid, abet, incite, compel or coerce the doing of any acts forbidden" by FEHA. Cal. Gov.Code § 12940(i). California courts have held that neither section allows a supervisor to be held *individually* liable for discrimination. *See Reno v. Baird*, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998).

In *Reno v. Baird*, Plaintiff Kimberly Reno alleged that her former employer terminated her because of her medical condition. *Id.* at 643–644, 76 Cal.Rptr.2d 499, 957 P.2d 1333. Based on this allegation, Reno brought FEHA claims alleging discrimination against both the employer and the supervisors who made the decision to terminate Reno. *Id.* She argued that the supervisors were individually liable under FEHA because they were acting as agents of the employer, and therefore could be considered "an employer" for the purposes of § 12940(a). *Id.* The California Supreme Court rejected that argument, holding that the legislature did not intend to make individual supervisors liable for discriminatory acts. *Id.* at 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333. The court explained, "[b]y limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." *Id.*

In reaching the conclusion that supervisors may not be held individually liable for discriminatory acts under FEHA, the court in *Reno v. Baird* adopted the reasoning of the court of appeal in *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 (1996). In *Janken*, the plaintiffs were former employees who alleged that they were terminated because they were over forty years old. *Id.* at 61, 53 Cal.Rptr.2d 741. The plaintiffs brought age discrimination claims under FEHA against both the employer and the supervisors who made the decision to terminate them. *Id.* The court addressed whether or not the supervisors could be sued individually. The court addressed two possible grounds for finding supervisors liable under FEHA. First, it addressed whether a supervisor could be considered an "employer" under FEHA by virtue of the fact that a supervisor acts as an agent of an employer in making personnel decisions. Second, the court addressed whether the FEHA provision prohibiting "any person" from "aiding and abetting" discrimination could give rise to individual liability on the part of supervisors. The court rejected both arguments for individual liability.

In addressing the first argument, the court in *Janken* focused on the definition of the word "employer" contained in Cal. Gov.Code § 12926(d). That section defines an employer as follows:

(d) "Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities, except as follows: "Employer" does not include a religious association or corporation not organized for private profit.

Cal. Gov.Code § 12926(d). The court reasoned that the Legislature could not have intended to exempt small employers—that

is, those employing fewer than five employees—and yet hold individual supervisors who were not themselves employers liable. 46 Cal.App.4th at 72, 53 Cal. Rptr.2d 741. "To so construe the statute would be 'incongruous' and would 'upset the balance' struck by the Legislature." *Id.* (citations omitted). In support of this conclusion, the court noted that allowing supervisors to be sued individually for discrimination would not "enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the exercise of supervisory judgment." *Id.*

The court in *Janken* also rejected the argument that supervisors could be held individually liable for discrimination under the provision of FEHA that prohibits "any person" from "aiding or abetting" discrimination. *Id.* at 77–79, 53 Cal.Rptr.2d 741. The court framed the issue as follows:

> Aiding and abetting occurs when one helps another commit a prohibited act.... The concept of aiding and abetting involves two separate persons, one helping the other. Here we deal with individual employees of a corporate employer. A corporation can act only through its individual employees.... Our question is whether it can properly be said that a corporate employee is "aiding and abetting" his or her corporate employer when the corporate employee acts on behalf of the corporation by making a personnel decision or, more precisely, whether this is the meaning intended by the Legislature.

*Id.* at 77, 53 Cal.Rptr.2d 741. The court concluded the Legislature did not intend such a result. *Id.* The court reasoned that "aiding and abetting," like conspiracy, requires "concerted wrongful action." *Id.* at 78, 53 Cal.Rptr.2d 741. Under the law of conspiracy, it is established that there can be no claim of conspiracy between a corporate employer and a corporate employee. *Id.* Thus, applying similar reasoning, the court held that the legislature could not have intended, in enacting the "aiding and abetting" provision, to impose individual liability for discriminatory acts on supervisors. *Id.*

Based on the cases discussed above, it is clear that Defendant James cannot be sued individually for any acts of discrimination alleged by Taylor. James is not "an employer" for the purposes of § 12940(a). Nor can he be held individually liable for "aiding and abetting" Beth Eden in any alleged discriminatory acts. Therefore, to the extent that Claim Six is based on a theory of discrimination, Taylor's First Amended Complaint fails to state a claim as to James and should be dismissed.

## 2. Harassment

■ In Claim Six, Taylor alleges that her FEHA claim is based not only on discrimination, but also on harassment. James argues that he is exempt from a claim of harassment because his employer is exempt as a religious entity under FEHA. The Court agrees.

Harassment is prohibited under FEHA in § 12940(j). That section provides that it is unlawful:

> For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or

supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

Cal. Gov.Code § 12940(j). In contrast to subsection (a), discussed above, subsection (j) explicitly provides for individual liability on the part of employees under some circumstances. In particular, subsection (j)(3) provides as follows:

An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

Cal. Gov.Code § 12940(j)(3).[5] In addition, subsection (j)(4) carries its own definition of the word "employer," which provides in relevant part as follows:

(4)(A)For purposes of this subdivision only, "employer" means any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities. The definition of "employer" in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision.

(B) Notwithstanding subparagraph (A), for purposes of this subdivision, "employer" does not include a religious association or corporation not organized for private profit.

Cal. Gov.Code § 12940(j)(4). The question here is whether the exemption for employers that are religious entities found in § 12940(j)(4) also applies to *employees* of such entities.

The Court has found no cases—California or otherwise—in which a court has addressed in any meaningful way the question of whether the religious entity exemption for employers extends to *employees* of such an entity.[6] James cites to *Pieszak v. Glendale Adventist Medical Center*, 112 F.Supp.2d 970 (C.D.Cal.2000) as holding that the exemption for religious entities also applies to employees of such entities. In *Pieszak*, a medical resident sued a medical center and two doctors in charge of the hospital's residency program for discrimination, harassment and retaliation under FEHA. *Id.* at 973. The medical center argued that it was exempt as a religious entity, and the court agreed. *Id.* In reaching this conclusion, the court rejected the plaintiff's argument that the religious entity exemption violates the State and Federal Constitutions' Establishment Clauses. *Id.* at 996. The court concluded that it does not and went on to dismiss the FEHA claims against both the medical center and the doctors. However, the

**5.** Subdivision (j) was enacted in 1999 and legislatively overturned *Carrisales v. Department of Corrections*, 21 Cal.4th 1132, 90 Cal. Rptr.2d 804, 988 P.2d 1083 (1999), which limited personal liability for harassment to supervisors, and exempted other employees.

**6.** The Court notes that FEHA contains two religious entity exemptions, both of which use the same words. The first is contained in the general definition of "employer" found in Cal. Gov.Code § 12926(d), which provides, in relevant part, that " '[e]mployer' does not include a religious association or corporation not organized for private profit." This definition of "employer" applies to claims of discrimination and retaliation. The other exemption, which applies to harassment claims, is found in § 12940(j)(4), quoted above.

court did not provide any reasoning in support of its conclusion that the doctors, like the medical center, fell under the religious entity exemption. Nor did the court address the distinction between discrimination and harassment claims. Thus, *Pieszak* provides little guidance on this issue.

James also cites to the California Supreme Court's decision in *Kelly v. Methodist Hospital of Southern California*, 22 Cal.4th 1108, 95 Cal.Rptr.2d 514, 997 P.2d 1169 (2000). That case, however, provides even less guidance on the issue than *Pieszak*. In *Kelly*, a nurse alleged that her employer had discriminated against her on the basis of age, in violation of California's fundamental public policy against age discrimination, as embodied in FEHA. *Id.* at 1112, 95 Cal.Rptr.2d 514, 997 P.2d 1169. The hospital brought a motion for summary judgment on the basis that it was a religious entity, which was granted by the trial court and, ultimately, affirmed by the California Supreme Court. *Id.* The issue in the case was whether a medical hospital affiliated with a church fell under the religious entity exemption of FEHA. *Id.* Although the plaintiff apparently sued her supervisor as well as her employer, there is no mention of the claims against the supervisor in the court's decision. Indeed, it is not even clear whether the plaintiff brought any FEHA claims against her supervisor. Therefore, *Kelly* provides little insight with regard to the issue here, that is, whether the religious entity exemption applies to employees of exempt employers.

In deciding the reach of this statute, the Court looks to its language. With respect to harassment, the Court finds particularly significant the fact that in enacting subdivision (j), the Legislature allowed the imposition of personal liability for harassment only on an employee "of an entity subject to this subdivision." Cal. Gov. Code § 12940(j)(3). Subsection (j)(4)(B),

in turn, makes clear that a "religious association or corporation not organized for private profit" is *not* subject to subdivision (j). An employee of a "religious association or corporation," therefore, is not an employee of "an entity subject to this subdivision" and is not covered by the subsection making employees liable for harassment. Accordingly, the Court concludes that the Legislature did not intend to allow for the imposition of personal liability for harassment on employees of employers that fall under the religious entity exemption contained in subdivision (j).

### 3. Retaliation

■ Finally, the Court must address whether FEHA allows for the imposition of personal liability for retaliation on a supervisor, where the supervisor is employed by an employer that falls under the religious entity exemption. While this is a close question, the Court concludes that it does not.

Retaliation is addressed in subdivision (h), which provides that it is unlawful:

> For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Cal. Gov.Code § 12940(h). Courts have held that because this provision includes not only employers but "any person," supervisors may be held personally liable for retaliation. *See Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1288 (holding that under FEHA, supervisor could be held personally liable for retaliation); *Walrath v. Sprinkel*, 99 Cal. App.4th 1237, 1241, 121 Cal.Rptr.2d 806 (2002) (same). However, this Court has found no cases which addresses whether

subdivision (h) allows for the imposition of personal liability on an employee who is employed by an employer that falls under the religious entity exemption.

As noted above, the religious entity exemption applicable to retaliation is found in § 12926(d), which provides, in relevant part, that the term " '[e]mployer' does not include a religious association or corporation not organized for private profit." While § 12926(d) does not explicitly address employees of such entities, the Court concludes that, with respect to retaliation claims at least, the Legislature intended to include employees within the scope of the religious entity exemption for employers. In the words of the *Janken* court, it would "upset the balance struck by the Legislature" if the Court were to construe the statute as allowing for the imposition of individual liability for retaliation on employees of religious entities. *See Janken,* 46 Cal.App.4th at 71, 53 Cal.Rptr.2d 741. First, it would be incongruous to impose liability on individual employees of such entities for retaliation when their employers are exempt. Given that a FEHA claim for retaliation requires that a plaintiff establish an adverse employment action, *see Akers v. County of San Diego,* 95 Cal. App.4th 1441, 1453, 116 Cal.Rptr.2d 602 (2002), and that that action is, typically, taken on behalf of the employer, *see Janken,* 46 Cal.App.4th at 77–78, 53 Cal.Rptr.2d 741, it is inconceivable that the Legislature could have intended to exempt religious entity employers from retaliation claims while leaving the employees of such entities liable for retaliation.

Indeed, if all employees of exempt religious entities were held to the standard of FEHA's retaliation provisions, it would have the effect of forbidding retaliation by the exempt religious entity itself. Corporations and other entities only act through their employees. If the employees are forbidden from committing certain acts, the entity is effectively barred as well.

Accordingly, if the Court were to conclude that employees of exempt religious entities were subject to retaliation suits under FEHA, it would undermine the statute's exemption for the entities.

Second, the Court finds support for this conclusion in the fact that the Legislature has exempted employees of religious entities from liability for harassment and has exempted *all* supervisors from liability for discrimination. The Court simply finds no basis on which to conclude that the Legislature intended to carve out retaliation claims as the one type of FEHA claim for which employees of religious entities are to be held individually liable. Accordingly, the Court concludes that Taylor's claim for retaliation against James fails to state a claim under Fed.R.Civ.P. 12(b)(6).

## IV. *CONCLUSION*

For the reasons stated above, Defendant Beth Eden's Motion is GRANTED. Defendant James' Motion is GRANTED as to Claims Six and Nine, which are dismissed with prejudice, and DENIED as to Claim Four.

IT IS SO ORDERED.