194 F.3d 962 (9th Cir. 1999)
 ELLIOT M. KATZ; IN DEFENSE OF ANIMALS, Plaintiffs-Appellees,
v.
UNITED STATES OF AMERICA; CORBIN LEE, Major; BRIAN O'NEILL; STEVEN PARKER, Sergeant; GLYNN C. MALLORY, JR., General, Defendants;
and
DONALD SAUCIER, Private, Defendant-Appellant.
 No. 98-16298
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 10, 1999--San Francisco, California
Filed October 22, 1999
 
 [Copyrighted Material Omitted]
 R. Joseph Sher, Barbara L. Herwig and Edward Himmelfarb, United States Department of Justice, Washington, D.C., for the defendant-appellant.
 David H. Williams and J. Kirk Boyd, Public Interest Lawyers Group, San Francisco, California, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California D. Lowell Jensen, District Judge, Presiding. D.C. No. CV-94-03466-DLJ.
 Before: David R. Thompson and Susan P. Graber, Circuit Judges, and Earl H. Carroll, District Judge[1].
 THOMPSON, Circuit Judge:
 
 
 1
 Army Private Donald Saucier ("Saucier"), acting as a military police officer, arrested Elliot M. Katz ("Katz") during a public event at the San Francisco Presidio. Katz was holding up a sign when he was arrested. According to Katz, Saucier and another officer grabbed him, tore the sign out of his hands, dragged him fifty feet, and violently tossed him into a van. Katz brought a Bivens action against Saucier and others for violations of his constitutional rights. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics , 403 U.S. 388(1971). Saucier filed a motion for summary judgment, contending he was entitled to qualified immunity. The district court denied Saucier's motion as to Katz's Fourth Amendment claim, which was grounded on Saucier's alleged use of excessive force in effecting Katz's arrest. Saucier appeals.
 
 
 2
 Saucier contends that, although our circuit has a long line of cases in which we have held that the reasonableness inquiry on the merits of a Fourth Amendment excessive force claim is the same as the reasonableness inquiry posed by a qualified immunity defense, these cases conflict with our en banc holding in Hammer v. Gross, 932 F.2d 842, 850 (9th Cir. 1991). We disagree, and affirm the district court.
 
 FACTUAL BACKGROUND[2]
 
 3
 This case arises out of Katz's arrest for his conduct during a speech given by Vice President Gore at the Presidio Army base in San Francisco. Katz, an animal rights activist, seeks damages from Saucier for violating his Fourth Amendment rights by using excessive force. This claim is one of multiple claims brought by Katz and In Defense of Animals ("IDA"), an animal rights organization of which Katz is president, against the United States, a national parks official, and various military officials.
 
 
 4
 On September 24, 1994, the public was invited to attend a special presentation by Vice President Gore, followed by other speakers, on the main post at the Presidio. The event was to celebrate the anticipated conversion of most of the Presidio to a national park. The conversion of the Presidio was a subject of public controversy, with animal rights activists concerned about the possibility of animal experimentation at the Army's Letterman Hospital.
 
 
 5
 Katz, a veterinarian who was then sixty years old, and other members of IDA were among the several hundred members of the public who attended the event. Katz arrived early and sat at the front of the public seating area, which was separated from the stage and dignitary seating area by a waist-high cyclone fence. He was wearing a visible, knee-high leg brace because of a broken foot. He was not wearing a shoe on his injured foot.
 
 
 6
 On the day of the event, Saucier was working as a military police officer. In his deposition, Saucier testified that he had been told by his superiors that demonstrations would not be allowed. He had been instructed to "diffuse the situation if it arises," but not to "draw that much attention if we didn't haveto." Saucier admits that Katz was "pointed out as one of the potential, you know, activists" and that he knew "who this person was . . . the person we need[ed] to keep an eye on."
 
 
 7
 Either before or as Vice President Gore began speaking, Katz silently removed a cloth banner from his jacket. As Gore was speaking, Katz started to unfold the banner and walked to the barrier. The banner measured approximately four feet by three feet and stated "Please Keep Animal Torture Out of Our National Parks." Katz intended to hang the banner over the fence so that Vice President Gore and the other speakers could read it.
 
 
 8
 According to Katz's deposition, before he could fully unfurl the banner, a military police officer "grabbed [him] from behind and somebody else tore the banner away. " These individuals were Defendants Saucier and Steven Parker, an Army sergeant. Katz did not try to prevent them from taking the banner. The two military police officers then each took one of Katz's arms and "started sort of picking[Katz] up and kind of walking [him] out, kind of like very hurriedly, sort of like the bum's rush." They took Katz to a military van parked behind the seating area and "violently threw" him inside. As the military police officers "shoved" Katz into the vehicle, he was able "to kind of prevent" his head from smashing into the floor of thevan. He "was able to stop the downward and the forward motion by just catching [himself] so that [he] didn't smash [himself]." With "a great deal of effort," he was barely able "to prevent [himself] from getting seriously hurt."
 
 
 9
 The military police officers never spoke to Katz. They closed the door to the van, leaving Katz alone in the vehicle for about twenty minutes. At some point, the military police officers placed another IDA member in the van, and they searched and handcuffed Katz and the other IDA member. They then drove Katz and the other IDA member to a military police station. After being briefly detained, Katz was released and allowed to drive home. Katz was never informed of the basis for his detention or cited with any violation of any law or regulation.
 
 PROCEDURAL HISTORY
 
 10
 Katz and IDA filed a lawsuit in the district court alleging multiple claims against the United States, a national parks official, and various military officials. Against Saucier, Katz alleged claims predicated upon violations of the First Amendment, by depriving Katz of his right to free speech, and the Fourth Amendment, by arresting Katz without probable cause and with excessive force. Katz asserted the same claims against Sergeant Parker, but at the time of this appeal Parker had not been served.
 
 
 11
 As to Katz's First Amendment-based claim, the district court granted summary judgment in favor Saucier and several of the military officials on the ground of qualified immunity. The district court determined that, "[i]n light of the transitional stage of the Presidio on September 24, 1994, . . . the [c]onstitutional rights of protestors at the base were not well settled on that date. [Thus], a reasonable military officer could have concluded that preventing protests at the base was [c]onstitutional." The district court also granted summary judgment in favor of Saucier on Katz's false arrest claim, holding that Saucier was entitled to qualified immunity. The district court, however, denied Saucier's motion for summary judgment on Katz's excessive force claim.
 
 
 12
 The district court described in detail the factual disputes between the parties concerning the amount of force used, the nature of the risk posed by Katz, and whether and to what degree Katz resisted arrest. The district court concluded that "[a] triable issue of fact exists as to whether [the] defendants employed excessive force in removing Katz from the crowd and placing him in the police van." On the issue of qualified immunity, the district court held that the law governing the use of force in an arrest was clearly established. Stating that "the qualified immunity inquiry is the same as the inquiry on the merits" in an excessive force claim, the district court concluded that "a question of fact [exists] regarding whether a reasonable officer could believe [Saucier's] use of force was lawful."[3]
 
 
 13
 Saucier timely filed this interlocutory appeal of the district court's order denying him qualified immunity.
 
 DISCUSSION
 I.
 Standard of Review
 
 14
 We review de novo a denial of summary judgment on qualified immunity. See Knox v. Southwest Airlines , 124 F.3d 1103, 1105 (9th Cir. 1997).
 
 II.
 Jurisdiction
 
 15
 We have jurisdiction under the collateral order doctrine to review an interlocutory appeal of the district court'sorder denying summary judgment on a qualified immunity defense. See Armendariz v. Penman, 75 F.3d 1311, 1316 (9th Cir. 1996) (citing Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)). The collateral order doctrine, however, "does not sanction review of a district court's order denying the defendant's motion for summary judgment on qualified immunity grounds when the basis for the defendant's motion is that the evidence in the pretrial record is insufficient to create a genuine issue of fact for trial." Id. at 1317 (citing Johnson v. Jones, 515 U.S. 304, 313-19 (1995)). Thus, on summary judgment, our review is generally "limited to determining whether clearly established law existed at the time of the incident that [the defendant's] actions could have violated." Watkins v. City of Oakland, 145 F.3d 1087, 1091 (9th Cir. 1998). We also have jurisdiction, however, to review the question whether there is any genuine issue of material fact as to whether an officer's conduct "met the [qualified immunity] standard of `objective legal reasonableness.' " Behrens v. Pelletier, 516 U.S. 299, 313 (1996); see also Collins v. Jordan, 110 F.3d 1363, 1370 (9th Cir. 1996) ("An appellate court [also ] has jurisdiction to consider defendants' assertion that the dispute of fact is not material.").
 
 III.
 
 16
 Qualified Immunity Analysis in an Excessive Force Case
 
 
 17
 Saucier argues that our en banc holding in Hammer, 932 F.2d at 850, conflicts with our later cases in which we have equated the reasonableness test for the defense of qualified immunity with the reasonableness test for the merits of an excessive force claim. We disagree.
 
 
 18
 "The doctrine of qualified immunity protects `government officials performing discretionary functions . . . from liability for civil damages insofar as their
 
 
 19
 conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Somers v. Thurman, 109 F.3d 614, 616-17 (9th Cir.) (quoting Harlow v.Fitzgerald, 457 U.S. 800, 818 (1982)), cert. denied, 118 S. Ct. 143 (1997)). The qualified immunity analysis is the same for Bivens actions against federal officials as it is for claims against state officials under 42 U.S.C. S 1983. See Harlow, 457 U.S. at 818 n.30. "To determine whether an official is entitled to qualified immunity, we conduct a two-part analysis: (1) We consider whether the law governing the official's conduct was clearly established. If it was not clearly established, the official is entitled to immunity from suit. (2) If the law was clearly established, we proceed to ask if under that law, a reasonable official could have believed the conduct was lawful." Somers, 109 F.3d at 617 (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993)).
 
 
 20
 Qualified immunity is a defense. In a civil rights action in which qualified immunity is asserted, the reasonableness of an officer's conduct comes into play under the second prong of that defense. In a civil rights action founded on the use of excessive force under the Fourth Amendment, the reasonableness of the officer's conduct also comes into play, not as an element of the officer's defense, but as an element of the plaintiff's case. The Supreme Court held in Graham v. Connor, 490 U.S. 386, 395 (1989), that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its `reasonableness' standard . . .." The Court explained that this " `reasonableness' inquiry in an excessive force case is an objective one: the question is whether the [officer's] actions are `objectively reasonable' in light of the facts andcircumstances confronting [him]." Id. at 397.
 
 
 21
 The essence of the Graham reasonableness inquiry is a balancing of the "force which was applied . . . against the need for that force." Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (internal quotation marks and citations omitted). In evaluating whether the force used to effect a particular arrest is reasonable, a court must pay careful attention to the following non-exhaustive list of factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape." Id. (citing Graham, 490 U.S. at 396).
 
 
 22
 Both the second prong of the qualified immunity defense (whether a reasonable officer could have believed his conduct was lawful), and the merits of an excessive force claim focus on the objective reasonableness of the officer's conduct. To determine whether an officer is entitled to the defense of qualified immunity when the use of force is in issue, the question asked is whether a hypothetical officer reasonably could have believed that the amount of force used was reasonable. To resolve the merits of an excessive force claim, the question is whether a reasonable officer could have believed that the force used was necessary under the circumstances. See Graham, 490 U.S. at 397. Because of this parity, we have repeatedly held that "the inquiry as to whether officers are entitled to qualified immunity for the use of excessive force is the same as the inquiry on the merits of the excessive force claim." Alexander v. County of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995); accord Acosta v. City and County of San Francisco, 83 F.3d 1143, 1147-48 (9th Cir.), cert. denied, 519 U.S. 1009 (1996); Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994), cert. denied, 515 U.S. 1159 (1995); Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994), cert. denied, 513 U.S. 1083 (1995); Palmer v. Sanderson, 9 F.3d 1433, 1435-36 (9th Cir. 1993); Morgan v. Woessner, 997 F.2d 1244, 1259-60 (9th Cir.), cert. dismissed, 510 U.S. 1033 (1993); Hopkins v. Andaya, 958 F.2d 881, 885 n.3 (9th Cir. 1992); Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991), cert. denied, 506 U.S. 972 (1992).
 
 
 23
 The majority of other circuits have taken similar positions. See Bass v. Robinson, 167 F.3d 1041, 1051 (6th Cir. 1999); Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999); Frazell v. Flanigan, 102 F.3d 877, 886-87 (7th Cir. 1996); Scott v. District of Columbia, 101 F.3d 748, 759 (D.C. Cir. 1996), cert. denied, 520 U.S. 1231 (1997); Mick v. Brewer, 76 F.3d 1127, 1135 n.5 (10th Cir. 1996); Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994); cf. Roy v. Inhabitants of the City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994) ("In police misconduct cases, however, the Supreme Court has used the same `objectively reasonable' standard in describing both the constitutional test of liability and the Court's own standard for qualified immunity." (citations omitted)). But see, Snyder v. Trepagnier, 142 F.3d 791, 800-01 (5th Cir. 1998) ("There is no inherent conflict between a finding of excessive force and a finding of qualified immunity."), cert. granted, 119 S. Ct. 863 (including "[w]hether a jury finding that a constitutional violation incurred by use of excessive force in an arrest necessarily precludes a finding of qualified immunity, so as to make such dual findings irreconcilable"), cert. dismissed, 119 S. Ct. 1493 (1999) (pursuant to agreement between the parties).
 
 
 24
 As the district court recognized, in an excessive force case, a material issue offact as to whether an officer used excessive force precludes summary judgment on a qualified immunity defense. An officer cannot have an objectively reasonable belief that the force used was necessary (entitling the officer to qualified immunity) when no reasonable officer could have believed that the force used was necessary (establishing a Fourth Amendment violation). See Street v. Parham, 929 F.2d 537, 540 (10th Cir. 1991). If genuine issues of material fact as to the amount of force used, or the circumstances that might justify the amount of force used, prevent a court from concluding as a matter of law that the force was objectively reasonable, then a material issue of fact necessarily exists as to whether an objectively reasonable officer could have believed the amount of force used was lawful.
 
 
 25
 We reject Saucier's assertion that our many and consistent panel opinions on this subject are in conflict with our en banc opinion in Hammer, 932 F.2d at 850. In Hammer, the plaintiff alleged that an arresting officer had used excessive force to obtain a blood sample from him after his arrest for drunken driving. See id. at 843-44. At the time of the arrest, prevailing Supreme Court authority expressly permitted the withdrawal of blood over the objection of the subject. See id. at 850 (citing Schmerber v. California, 384 U.S. 757 (1966) and Breithaupt v. Abram, 352 U.S. 432 (1957)). The constitutionality of the use of force to extract blood was judged by the "shock the conscience" standard, which standard the plaintiff Hammer conceded was not met. See id. We held that, although "Graham imposes a balancing test that can . . . result in force being found excessive even though it did not rise to the level that shocks the conscience[, r]easonable officers . . . cannot be required to have anticipated the ruling in Graham." Id. Thus, we concluded that the defendants were "immune from personal liability in damages for their actions in applying or authorizing the use of force that was unreasonable in all the circumstances but well below the level that shocks the conscience." Id. It was in this context that we stated:
 
 
 26
 [The plaintiff] suggested at oral argument that an officer who has used unreasonable force cannot, by definition, have acted reasonably. A similar contention was rejected, however, in [Anderson v. Creighton, 483 U.S. 635 (1987)]. Whether a search is "unreasonable" within the meaning of the Fourth Amendment is an entirely different question from whether an officer could have believed his actions lawful under the Fourth Amendment. [See id.] at 643-44. To accept [the plaintiff's] contention would be to eliminate all possibility of immunity for violations of the Fourth Amendment, an unacceptable outcome. See id. at 643.
 
 
 27
 Id.
 
 
 28
 Saucier contends this passage contradicts and invalidates our subsequent holdings that the "objective reasonableness" tests for excessive force and qualified immunity are the same. It does not. Hammer involved circumstances not at issue here or in the subsequent line of cases Saucier challenges. Graham articulated a new objective reasonableness test that was different from what had been the clearly-established "shock-the conscience" test. The amount of force used in Hammer violated the Fourth Amendment because it was objectively unreasonable, but an objectively reasonable officer could have believed that his conduct did not "shock the conscience" and thus was in fact lawful under the legal test used at the time. Such an outcome is specifically contemplated by the qualified immunity test, particularly the first prong.[4] See, e.g., Chew v.Gates, 27 F.3d 1432, 1446-50 (9th Cir. 1994) (affirming qualified immunity because the training and use of police dogs did not contravene clearly established law).
 
 
 29
 Unlike the situation in Hammer, our subsequent line of cases which have equated the merits of the "objective reasonableness" inquiry in a use-of-force case with the "objective reasonableness" inquiry in a qualified immunity defense do not eliminate the availability of qualified immunity as a defense in excessive force cases. A defendant will always be entitled to qualified immunity when the law governing his or her conduct was not clearly established -the first prong of the qualified immunity defense.
 
 
 30
 As a fallback position, Saucier argues that even if the district court applied the correct legal test to his qualified immunity defense, the amount of force he used in arresting Katz was so minimal that it was per se reasonable.[5] We disagree. The facts are in dispute. According to Katz, without warning or speaking to him, Saucier and Parker approached him from behind, grabbed his banner, dragged him about fifty feet, and tossed him into the back of a van so violently that he narrowly avoided serious injury. Taking these facts as true for the purpose of summary judgment, no reasonable officer could have believed that the alleged amount of force used to arrest Katz was necessary under the circumstances. See Liston, 120 F.3d at 976 ("[W]e must pay careful attention to (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape."). Unfurling a banner at a public event does not appear to be a particularly severe crime. Katz was sixty years old and wearing a leg brace. There is no indication that he was armed or dangerous. From all that appears at this stage of the case, he did not pose an immediate threat to the safety of the officers or anyone else. Although Saucier disputes whether Katz resisted arrest, Katz says he did not.
 
 
 31
 In sum, taking the facts as asserted by Katz in the light most favorable to him, no reasonable officer could have believed that the amount of force used was lawful. See, e.g., Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998) (officer not entitled to qualified immunity for pushing, handcuffing, and dragging plaintiff in absence of justification); Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 353 (1st Cir. 1995) ("[W]e are not persuaded that the record evidence compelled the conclusion that the force with which [the defendant officer] effected the sudden, unannounced, violent seizure and removal of Alexis's person was objectively reasonable . . . ."). Saucier was not entitled to summary judgment as a matter of law.
 
 CONCLUSION
 
 32
 The district court correctly relied on our long line of cases consistently holding that the reasonableness inquiry as to whether a defendant is entitled to the defense of qualified immunity in a claim of excessiveforce under the Fourth Amendment is the same as the reasonableness inquiry on the merits of such a claim. Genuine issues of material fact are in dispute as to whether Saucier used excessive force in effecting Katz's arrest. The district court did not err in denying Saucier's motion for summary judgment predicated on qualified immunity.
 
 
 33
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Earl H. Carroll, United States Senior District Judge for the District of Arizona, sitting by designation.
 
 
 [2]
 Consistent with the standard of review on summary judgment, the facts are presented in the light most favorable to Katz. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).
 
 
 [3]
 Because of the lack of a link between the actions of Defendants General Glynn Mallory, Jr., and Major Corbin Lee and Saucier's use of force, the district court granted summary judgment in favor of those defendants on Katz's Fourth Amendment-based claims.
 
 
 [4]
 Most of the Supreme Court's qualified immunity discussion in Anderson focuses on the proper formulation of the "clearly established" prong. See Anderson, 483 U.S. at 439-41; cf. Harlow, 457 U.S. at 818-19 ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."). Although in Anderson the Court rejected the argument that qualified immunity is never available in Fourth Amendment cases, the Court did not address the application of the second prong of the qualified immunity analysis, let alone its application in excessive force cases. See Anderson, 483 U.S. at 643-44; see also Graham, 490 U.S. at 399 n.12 (expressly reserving the question whether qualified immunity is available in excessive force cases).
 
 
 [5]
 The question of the reasonableness of force is usually a question of fact for the jury. "However, on summary judgment, the court may make a determination as to reasonableness when, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officer's] use of force was reasonable. " Hopkins, 958 F.2d at 885.