James F. ROBINSON, Plaintiff–
Appellant,

v.

SOLANO COUNTY; Brian Cauwells, Solano County Sheriff's Deputy Officer; Gary Faulkner, Solano County Sheriff's Deputy Officer, Defendants–Appellees.

No. 99–15225.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2000

Filed July 12, 2000

As Amended Sept. 19, 2000.

William M. Simpich, Oakland, California, for the plaintiff-appellant.

Terrence J. Cassidy, Porter, Scott, Weiberg & Delehant, Sacramento, California, for the defendant-appellee.

Before: FLETCHER, CANBY, Jr. and O'SCANNLAIN, Circuit Judges.

Opinion by Judge FLETCHER; Dissent by Judge O'SCANNLAIN.

FLETCHER, Circuit Judge:

James F. Robinson brought suit against Solano County and Officers Brian Cauwells and Gary Faulkner alleging false arrest, false imprisonment, and the use of excessive force in arresting him. Robinson appeals from the district court's pretrial grant of summary judgment for the defendants-appellees on the state law claims and the magistrate judge's post-trial grant of judgment as a matter of law on the federal excessive force claim. We reverse and remand for a new trial.

## I. Factual Background and Procedural History

Plaintiff–Appellant James F. Robinson, an African American, is a retired San Francisco police officer. When the events at issue in this case took place, he was 64 years old.

Robinson lives in a farmhouse set on a five acre parcel in the semi-rural area of Fairfield, California, where he raises livestock including cattle, ducks, turkeys, geese, and chickens. He has fenced his property and keeps a shotgun to protect his livestock. One morning he saw two dogs attacking and killing his livestock. He took out his shotgun and shot both dogs, killing one and wounding the other. Robinson then went looking for the wounded dog. His search took him to the public road fronting his property, and he walked approximately 50 feet along the road carrying the shotgun.

While Robinson was on the road looking for the dog, his neighbor Sarah Reyes, the owner of the dogs, came out of her house. According to Robinson, he was standing approximately 160 feet from Ms. Reyes when she yelled to him about the dogs. She was angry that he had shot her dogs, and he tried to explain that he did not know the dogs were hers. The two had a heated conversation, after which Robinson returned home.

Ms. Reyes went back into her house and phoned the police. The police sent out a radio dispatch regarding a man carrying a shotgun who had just shot two dogs and "is in the middle of the street yelling at this time." The appellee officers, as well as a number of other police officers, responded to the call and parked on the public road in front of Robinson's property.

Robinson, who was apparently at that moment discussing with his wife the need to call the authorities, saw six police vehicles pull up outside his home. He decided to go explain the incident to them. Wearing an unbuttoned shirt and a pair of jeans, Robinson walked the 135 feet from his front door to the street. He asserts that the officers were able to see him approach, and that they observed that his demeanor was calm. He also states that the officers kept their guns holstered as he approached. Officers Cauwells and Faulkner, however, contend that Robinson appeared agitated, and that they unholstered their guns upon first seeing him.

As Robinson neared the street, Officer Cauwells, who had been with the police force approximately nine months at that time, walked forward to meet him. Robinson said, "My name is Robinson and I'm the man that was involved with the dogs." At that point, officer Cauwells pointed his gun at Robinson's head from a distance of about six feet. Officer Faulkner also took out his gun and pointed it at Robinson. Cauwells told Robinson to put his hands over his head. As Robinson was putting his hands up, he asked the officers "What's going on?" Without answering the question, Cauwells repeated his command and stepped forward, and according to Robinson, thrust his gun three or four feet from Robinson's head. As a former police officer, Robinson was aware of the immediate physical danger posed by a gun pointed at his head from point blank range; he testified that he feared for his life.

Two police officers not named in this suit handcuffed Robinson and shoved him into the back seat of their patrol car.[1] Robinson was confined in the police car while the officers talked to Ms. Reyes and other neighbors. The interval was approximately 15–30 minutes. Both sides agree that Robinson attempted to explain the situation to the officers, but that they refused to listen to him. The officers released Robinson after they ascertained that Robinson had not violated the law.

Robinson asserts that at no time—from the original detention to release—did the officers search him for any weapons, and he was carrying none. The officers, on the other hand, testified that they searched Robinson. However, the parties agree that the officers failed to notice that Robinson was wearing a utility knife attached to his belt, and they never removed the knife from his person. The parties also agree that none of the officers ever asked Robinson for a statement of his version of the events.

Robinson was never charged with any crime for the events that happened that day. He filed a complaint in federal court alleging both state and federal claims against the individual officers and Solano County. Chief District Judge Karlton granted partial summary judgment with respect to all claims against Solano County and all state law claims against the individual defendants. However, the district court declined to grant summary judgment on the § 1983 claims against the police officers. The parties then stipulated to jury trial on the federal claims before Magistrate Judge Nowinski.

The jury found that the length of Robinson's detention was reasonable, but divided four to four on the question of whether the force employed to seize Robinson was reasonable. After the jury had deadlocked and was dismissed, Magistrate Judge Nowinski granted the appellees' Rule 50 motion for judgment as a matter of law on

the federal excessive force claim, holding that they were entitled to qualified immunity.

Robinson appeals the grant of summary judgment on the state law claims and the grant of judgment as a matter of law on the federal excessive force claim.

## II. Jurisdiction and Standard of Review

■ The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's post trial grant of judgment as a matter of law de novo. *See Marcy v. Delta Airlines,* 166 F.3d 1279, 1282 (9th Cir.1999). We also review a district court's grant of summary judgment de novo. *See Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.), *cert. denied,* — U.S. —, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## III. Qualified Immunity

Magistrate Judge Nowinski found that the officers were entitled to qualified immunity from Robinson's excessive force claim because they "have no dependable guidance upon the constitutional limitations, if any, upon a mere threat or display of force to effect a seizure."

■ Qualified immunity " 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Behrens v. Pelletier,* 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To evaluate a qualified immunity claim, we follow a two-step analysis: 1) we ask whether the law governing the official's conduct was clearly established; 2) if so, we ask whether, under that law, a reasonable officer could have believed the conduct was lawful. *See Katz v. United States,* 194 F.3d 962, 967 (9th Cir.1999) (citing *Somers v. Thurman,* 109 F.3d 614, 617 (9th Cir.1997) and *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993)).

1. Robinson's complaint alleged that the handcuffing involved excessive force. However, the district court dismissed the handcuffing claim and Robinson does not appeal that ruling.

A. Clearly Established Law

█ In order for a right to be " 'clearly established' " its "contours must be sufficiently clear that [at the time of the alleged conduct] a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

█ The contours of the right at issue in this case were sufficiently clear at the time of the alleged conduct, December 7, 1995. Robinson had a right to be free from excessive force. The law is clear in this circuit that holding a gun to a suspect's head may constitute excessive force.[2] *See McKenzie v. Lamb,* 738 F.2d 1005, 1010 (9th Cir.1984) (plaintiff had a claim for excessive force where officers handcuffed suspects, threw them to the floor and pressed service revolvers against their heads); *see also McDonald v. Haskins,* 966 F.2d 292 (7th Cir.1992) (holding gun to head of 9–year old child and threatening to pull the trigger may be excessive force); *Petta, supra; Stephens, supra.*[3]

█ It is true that the facts in *McKenzie* are different. There, in addition to pointing their guns at the appellants, the police forced them against a wall, handcuffed them, and threw them down. Here, Robinson does not claim that he was thrown down, but he does assert that the officers' actions demonstrate that they knew that he posed no risk of harm prior to their use of force. These different circumstances do not change our analysis of whether *McKenzie* put officers on notice that putting a gun to a suspects head in point blank range can constitute excessive force. "If new weapons or tactics are sufficiently similar in design, purpose, effect, or otherwise to weapons or procedures that have been held unconstitutional, so that a reasonable officer would have known that a court's holding of unconstitutionality would be extended to the new weapon or tactic, then qualified immunity will not apply." *Chew v. Gates,* 27 F.3d 1432, 1449 (9th Cir.1994). The absence of precedent addressing an identical factual scenario does not mean that the right is not clearly established. "Specific precedent is not required in order to overcome a qualified immunity defense, but the law in question must be sufficiently clear that the unlawfulness of the action would have been apparent to a reasonable official." *Chew,* 27 F.3d at 1447; *see also Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (" 'clearly established' " for purposes of qualified immunity does not mean that " 'an official action is pro-

2. We reject the dissent's and appellees' argument that pointing a service revolver at a suspect can never constitute excessive force. They cite Third and Fifth Circuit opinions in support of their position. *See Sharrar v. Felsing,* 128 F.3d 810 (3rd Cir.1997) (no Fourth Amendment violation where police told four plaintiffs, who were being arrested for a violent episode with a gun, to lie down and pointed guns at them); *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1230 (5th Cir.1988) (no excessive force claim when officer pointed gun at plaintiff during a street fight). Contrary to both the appellees' and the dissent's contention, both the Third and Fifth Circuits have found an officer's conduct may constitute excessive force where the officer pointed a revolver at a suspect. *See Petta v. Rivera,* 143 F.3d 895, 905 (5th Cir.1998) (" 'police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him' "; limiting the hold-

ing of *Hinojosa v. City of Terrell* to its facts); *Black v. Stephens,* 662 F.2d 181, 185, 193 (3rd Cir.1981) (sustaining jury verdict for plaintiffs where plain-clothes police officer pointed revolver at plaintiffs during an investigatory stop). Holding that pointing a service revolver can never constitute excessive force would contravene our precedents and undermine the principle that we must engage in a case-by-case analysis.

3. A member of the court has called to the attention of the panel, *Fuller v. Vines,* 36 F.3d 65 (9th Cir.1994) as bearing on the issue we decide here. We conclude it does not. Its focus was entirely on whether there was a seizure, not whether excessive force was used. The officer never intended to arrest Fuller, only to subdue him when he became angry and made threatening moves toward the officers who had shot his dog. The court held there was no seizure and accordingly did no fourth amendment analysis as to whether excessive force was used.

tected by qualified immunity unless the very action in question has previously been held unlawful.' ") (quoting *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034). In *Mendoza v. Block,* 27 F.3d 1357, 1362 (9th Cir.1994), we stated that our circuit has set forth a means for analyzing excessive force cases that "applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog." Thus, "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." *Id.*

We conclude, therefore, that the clear contours of the law governing the pointing of guns at suspects put reasonable officers on notice that unreasonably pointing their guns at Robinson's head would violate his constitutional rights.

### B. Reasonableness of the Conduct

Pointing a gun at a person can cause severe psychological trauma. It is tantamount to a death threat—"put your hands in the air or I will shoot you." Indeed, pointing a gun constitutes a criminal assault in California. *See* Cal.Penal Code § 240; *People v. Daniels,* 18 Cal. App.4th 1046, 22 Cal.Rptr.2d 877 (1993). And the threat posed by a pointed gun is not just theoretical; we are all aware of the many tragic incidents in which guns are fired accidentally, causing death because of the slip of a finger, a stumble, or other mishap.

Of course, there are circumstances under which an officer must take the precaution of drawing her service revolver or pointing it at a suspect. But drawing and pointing a gun are serious steps that are not warranted under all circumstances, and officers can be held liable under § 1983 for pointing a gun at a suspect where the circumstances do not warrant such a use of force. Whether, under the circumstances in this case, the officers' conduct was reasonable is a question of fact.

In an excessive force case, the reasonableness of an officer's conduct is both an element of the officers' defense and an element of the plaintiffs case, and our " 'inquiry as to whether the officers are entitled to qualified immunity for the use of excessive force is the same as the inquiry on the merits of the excessive force claim.' " *Katz,* 194 F.3d at 967–968 (quoting *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.1995)); *see also Liston v. County of Riverside,* 120 F.3d 965, 976 n. 10 (9th Cir.1997).

We judge the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. To determine whether the force employed was reasonable, the fact finder conducts a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In conducting this balancing, the fact finder considers: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew,* 27 F.3d at 1440. This list is not exhaustive; the fact finder may also consider other factors such as "whether the plaintiff resisted or was armed, whether more than one arrestee or officer was involved, whether the plaintiff was sober, whether other dangerous or exigent circumstances existed at the time of the arrest." *Id.* at 1440, n. 5.

In this case, neither party disputes that the officers were responding to a call alleging that a man with a shotgun was walking on a public road. They do, however, dispute whether the officers believed that Robinson posed a threat to them or to the public. Robinson alleges that, when the police first saw him, he was walking toward them in a calm and collected manner. He states that they had ample time to observe that he was not carry-

ing the shotgun he had carried earlier. Thus, he claims, they could not have thought he posed any risk of harm. The officers, however, claim that Robinson appeared agitated when they first saw him, that he could have been concealing a weapon, and that he posed a potential threat.

Robinson also states that none of the officers drew their guns as he walked toward them, indicating that they did not perceive themselves to be in imminent danger. They only drew their weapons as he introduced himself. And, after the police officers had handcuffed Robinson, they did not conduct a pat-down search to determine whether he was carrying a weapon. The officers, on the other hand, claim that they drew their weapons upon first seeing Robinson, and that they pat searched him immediately.

Neither party seems to contest that Robinson could not be considered to be a flight risk; he neither resisted arrest nor attempted to evade arrest. On the contrary, he walked up to the police voluntarily in order to tell his story. Further, we note the fact that the plaintiff was completely surrounded by the police, which greatly diminished both the potential threat he may have posed as well as his flight risk. *See Chew,* 27 F.3d at 1443.

■ Because qualified immunity was raised in the context of a Rule 50 motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *LaLonde v. County of Riverside,* 204 F.3d 947, 959 (9th Cir.2000). Judgment as a matter of law is not proper unless the evidence permits only one reasonable conclusion. *See Amarel v. Connell,* 102 F.3d 1494, 1521 (9th Cir.1996) (amended opinion). And where "conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde,* 204 F.3d at 959.

■ Although qualified immunity may in many instances be decided as a matter of law,

> [i]f genuine issues of material fact as to the amount of force used, or the circumstances that might justify the amount of force used, prevent a court from concluding as a matter of law that the force was objectively reasonable, then a material issue of fact necessarily exists as to whether an objectively reasonable officer could have believed the amount of force used was lawful.

*Katz,* 194 F.3d at 969. Thus, we must send the case to a jury if we cannot decide on the record before us whether the officers' conduct was reasonable.

Here, the disputed facts go to the very heart of the question of whether the officers' conduct was reasonable. A reasonable jury considering all the facts could determine that the officers' conduct was reasonable, and that they are entitled to qualified immunity. On the other hand, a reasonable jury could determine that the conduct was unreasonable, and find for Robinson.[4] Under these circumstances, it is inappropriate to decide the case as a matter of law. *See Katz,* 194 F.3d at 968–969.

We remand for retrial so that a jury may decide whether the use of force was reasonable.

### IV. State Law Claims

We also reverse the district court's grant of summary judgment on Robinson's state law claims for false arrest, false imprisonment, assault and battery, negligence and gross negligence. The district court granted summary judgment on all state law grounds because it held that California grants immunity to both the individual appellees and the county.

■ As to the county, the court found that Robinson had failed to provide evidence to support municipal liability under the rule set out in *Monell v. Dep't of*

---

**4.** In fact, the previous jury hung four to four on precisely this point.

*Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, California has rejected the *Monell* rule, under which a county may be held liable in a § 1983 suit only if it has adopted an illegal or unconstitutional policy or custom. California holds counties liable for acts of their employees under the doctrine of *respondeat superior*, and grants immunity to counties only where the public employee would also be immune from liability. *See* Cal. Gov't Code § 815.2; *see also Scott v. County of Los Angeles*, 27 Cal.App.4th 125, 32 Cal.Rptr.2d 643, 650 (1994) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of *respondeat superior* to the same extent as a private employer. Under subdivision (b), the County is immune from liability if, and only if, [the employee] is immune."); *White v. County of Orange*, 166 Cal.App.3d 566, 212 Cal.Rptr. 493, 495 (1985) ("in governmental tort cases 'the rule is liability, [and] immunity is the exception'" to be applied only where statutorily mandated).

 Although public employees are immune from suit "resulting from [their] act or omission where the act or omission was the result of the exercise of the discretion vested in [them]," Cal. Gov't Code § 820.2, they are not immune from the claims raised in this case. Robinson's claims for assault, battery, negligence and gross negligence arise from his excessive force claim, and California denies immunity to police officers and counties where the officers used excessive force in arresting a suspect. *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1348 (1991) ("a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct"); *Scruggs v. Haynes*, 252 Cal.App.2d 256, 60 Cal.Rptr. 355, 360 (1967) ("California cases have consistently held that a peace officer making an arrest is liable to the person arrested for using unreasonable force."). Also, under California Government Code

section 820.4, public employees are not entitled to immunity in suits for false arrest or false imprisonment. As set forth above, where the officers are not immune from suit, neither is Solano County.

We therefore reverse the district court's grant of summary judgment on Robinson's state law claims against the individual officers and against Solano County.

REVERSED and REMANDED for a new trial.

O'SCANNLAIN, Circuit Judge, dissenting:

The district court granted the sheriff's deputies in this case qualified immunity after concluding that "[p]olice have no dependable guidance [regarding] the constitutional limitations, if any, upon a mere threat or display of force to effect a seizure." This court now reverses, finding that clearly established law put the officers on notice as to the potential illegality of their conduct. Because the majority finds "clearly established law" where none exists, I must respectfully dissent.

I

Before proceeding to the specific facts of this case, a few brief observations regarding qualified immunity are in order. For purposes of qualified immunity analysis, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We have previously described the scope of the doctrine in the following terms:

[T]he qualified immunity "defense" has been defined quite broadly: "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... [I]f officers of reasonable competence would disagree on th[e] issue [whether or not a specific action was constitutional], immunity should be recognized."

*Moran v. Washington,* 147 F.3d 839, 844 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Although the qualified immunity inquiry would appear to be fairly straightforward, our cases defining the scope of the defense are less than pellucid. This is in large part due to the difficulty of selecting the appropriate level of generality for purposes of qualified immunity analysis. Fortunately, the Supreme Court has recognized this difficulty and provided the following guidance:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy [the balance struck by the doctrine of qualified immunity].

*Anderson,* 483 U.S. at 639, 107 S.Ct. 3034. Thus, in qualified immunity cases, the crucial inquiry should not be the somewhat academic question of "how do we define the right allegedly violated" (such as the rather general "right to be free from excessive force"). Rather, the key question is "did the challenged actions fall short of objective legal reasonableness," such that "in light of pre-existing law the unlawfulness [of the official's actions was] apparent." *Id.* at 640, 107 S.Ct. 3034.

## II

Here, the majority defines the right at issue—"the right to be free from excessive force"—at such a high level of generality that the resulting qualified immunity analysis "bear[s] no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow.*" *Id.* at 639, 107 S.Ct. 3034. The question here is not whether Robinson enjoys a "right to be free from excessive force," which, of course, he does (doesn't everyone?); rather, the issue is whether, "in light of *pre-existing* law, the unlawfulness [of the deputies' specific actions was] apparent." *Id.* at 640, 107 S.Ct. 3034 (emphasis added). Based on our cases, as well as those of our sister circuits, I must conclude that such unlawfulness—if any—was far from apparent.

Although the majority is correct in noting that it is not necessary for the very actions in question to have been held unlawful, the state of the law must be "sufficiently clear that a reasonable official would understand that what he is doing violates [the law]." *Id.* I find the requisite clarity sorely lacking in this case. We have never squarely addressed the extent to which merely pointing a weapon at a suspect, unaccompanied by the use of physical force, can give rise to § 1983 liability for violating the Fourth Amendment's prohibition against unreasonable seizures. The majority relies upon *McKenzie v. Lamb,* 738 F.2d 1005, 1010 (9th Cir.1984), for the proposition that pointing a service revolver at a suspect may constitute excessive force. The facts of *McKenzie,* however, are very different from those in the case at bar. The *McKenzie* panel reversed a grant of summary judgment in favor of police officers in a § 1983 action alleging the use of excessive force. In contrast to this case, where a weapon was pointed at Robinson but no physical force was used against him, the pointing of weapons in *McKenzie* was accompanied by significant force: Police officers "burst into the hotel room with weapons drawn, *forced* appellants against

the wall, handcuffed them, and *threw* them to the floor." *Id.* at 1010 (emphases added). In light of the additional conduct of the officers in *McKenzie* that accompanied the pointing of weapons at the suspect, *McKenzie* does not establish—clearly or otherwise—that the actions of the officers in this case might be illegal.

Furthermore, persuasive authority from other circuits supports the proposition that merely pointing a weapon at a person does not give rise to § 1983 liability for violating the Fourth Amendment's prohibition against excessive force. *See, e.g., Sharrar v. Felsing,* 128 F.3d 810 (3d Cir.1997) (finding no Fourth Amendment violation when officers required plaintiffs to lie face down in dirt, with guns at their heads); *Wilkins v. May,* 872 F.2d 190, 194 (7th Cir.1989) ("[T]he action of a police officer in pointing a gun at a person is not, in and of itself, actionable [under the Fourth Amendment]."); *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1229–31 (5th Cir.1988) (overturning a jury verdict against an officer for constitutionally excessive use of force, stating that "we are unwilling to say that merely pointing the gun was grossly disproportionate to the need for action"). In light of these precedents, the district court was correct in reaching the following conclusion: "Police have no dependable guidance [regarding] the constitutional limitations, if any, upon a mere threat or display of force to effect a seizure, and accordingly defendants are entitled to qualified immunity from suit." This conclusion makes particular sense in a case like this one, where the suspect to be seized was known to be in possession of a deadly weapon that he had recently used (even if only against dogs).[1]

III

While the treatment of Robinson by the defendant officers is certainly regrettable, sympathy for an attractive plaintiff does not justify distorting the law of qualified immunity. It is difficult to imagine how police officers can be held liable for alleged failure to adhere to law that was so "clearly established" that not even our district courts can divine its contours.[2] I respectfully dissent.

1. This case is therefore quite distinguishable from *McDonald v. Haskins,* 966 F.2d 292 (7th Cir.1992), where an officer pointed his gun at the head of a nine-year-old child who was not suspected of any crime or of being armed. It is also very different from *Black v. Stephens,* 662 F.2d 181, 189 (3d Cir.1981), where an unidentified police officer "brandish[ed] his revolver" only eighteen inches away from the head of a man the officer had no cause to believe armed—with the man's wife "in the precise line of fire"—and threatened to shoot.

2. "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne,* 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).