Filed 5/16/23  Doe v. Grace Community Church CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, Plaintiff and Appellant, v. GRACE COMMUNITY CHURCH, Defendant and Respondent. | D079717 (Super. Ct. No. 37-2017-00002921-CU-PO-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Reversed.

Singleton Schreiber, Benjamin I. Siminou; Bish & Cutting, and Stacey R. Cutting, for Plaintiff and Appellant.

Tyson & Mendes, Susan L. Oliver, and Emily S. Berman, for Defendant and Respondent.

## INTRODUCTION

In January 2017, John Doe filed a lawsuit against Grace Community Church (the church) and its employee Joel. D.[1] Doe alleged that Joel had touched his penis while he slept during an overnight trip with the church's youth dance group in July 2009, when Doe was 17. Doe also alleged that Joel repeated this conduct again in July 2010, shortly after Doe turned 18. Doe slept through both incidents. He further alleged that Joel revealed his conduct to church leaders, and the church failed to disclose either incident to Doe or his parents. The complaint stated causes of action against Joel for assault and battery and intentional infliction of emotional distress. It stated causes of action against the church for negligence, negligent hiring, supervision and retention, negligent failure to warn, negligent misrepresentation, and vicarious liability.

Neither Doe nor the church deposed Joel. Joel never appeared, and the court entered a default judgment against him. As trial approached, the church filed five motions in limine to exclude any statements Joel allegedly made about his conduct, as well as statements made by others discussing these statements. The church argued Joel's statements were inadmissible hearsay, and statements by others were second- and third- layer hearsay, made unreliable by the absence of any direct evidence regarding Joel's alleged conduct.

---

[1] We refer to individuals involved in the events by first names and last initial to protect personal privacy interests. (See Cal. Rules of Court, rule 8.90(b).)

The court granted the motions to exclude the hearsay evidence, concluding that it was inadmissible hearsay and finding it was unduly prejudicial under Evidence Code[2] section 352 even if it were admissible.

At the church's request, the court also held a bifurcated trial to evaluate whether any claims were barred by statutes of limitations. The court found that only causes of action arising from the 2009 incident could proceed. In its statement of decision, the court also implicitly dismissed the cause of action for vicarious liability.

Recognizing Doe could not meet his pleading burden without the excluded hearsay evidence, the parties entered a stipulated judgment, and Doe appealed. Doe contends the hearsay evidence falls within an exception under sections 1230, 1222, and/or 1221. He also contends the court abused its discretion by granting the motion under section 352 because the hearsay evidence is more probative than prejudicial. Finally, Doe maintains that the court improperly dismissed the vicarious liability claim against the church because he can validly argue a theory of respondeat superior.

We conclude that the court abused its discretion in concluding no hearsay exceptions applied and by excluding the evidence under section 352. Because the excluded evidence was admissible, it was also error to dismiss the vicarious liability cause of action under a theory of respondeat superior. Thus, we reverse the judgment.

BACKGROUND AND PROCEDURAL FACTS

Doe was a member of Grace Community Church in Houston, Texas, a subsidiary of Grace International Church, which also has subsidiary congregations in Southern California. At the time of the incidents, the

---

[2] Statutory references are to the Evidence Code unless otherwise specified.

3

church had three pastors:  founding pastor Steve R., who was also chairman of the board; senior pastor Garrett B., who also served as an executive pastor; and former executive pastor Brian G., who was not a member of the executive board or committee.  Doe participated in youth ministry and the NOIZE Academy, a performing arts program for the church's youth.

Joel ran the NOIZE Academy, offering afternoon, weekend, and summer singing and dancing classes.  He also directed "The NOIZE," the NOIZE Academy's dance team, which consisted of a group of 10 standout dancers.  The NOIZE traveled to venues in California and Texas to perform.  Doe's involvement in The NOIZE meant he spent a lot of time with Joel, who became a mentor and a friend, a relationship Doe's mother described as "a natural thing."  Sometimes Joel and Doe met socially outside of church activities to see a movie or grab a burger.

In July 2009, when Doe was 17 years old, he participated in an overnight dance trip with The NOIZE, supervised by Joel.  Joel shared a hotel suite with a handful of boys, including Doe.  One night, while everyone slept, Joel crept to Doe's bed, reached under the covers, and fondled Doe.  The next day, Joel confessed to Brian.  Brian counseled Joel on ways to tame his "dark thoughts."

In July 2010, six weeks after Doe turned 18, The NOIZE traveled again to San Diego.  Joel again shared a suite with a handful of boys, including Doe.  And Joel again went into Doe's room, crept over to Doe's bed while everyone slept, and fondled Doe under the covers.  The next day, Joel again confessed to Brian.  Brian suspected Doe was not asleep when Joel touched him.

That same day, Joel told Garrett he had touched Doe inappropriately the night before. Joel also revealed to Garrett that there had been an earlier incident.

Brian, Garrett, and Steve met with Joel, and Joel told them what occurred the night before. The church leaders sent Joel to counseling. They did not then report the information to Doe, his parents, parents in the church community, or the police. They did not terminate Joel's employment. They did not restrict Joel's access to children, but they told Joel he was not to be alone with any minors.

Brian's daughter and Doe had begun dating in 2009, and they were co-lead dancers for The NOIZE. In February 2011, Brian disclosed to his family what Joel had done, and he directed his daughter to disassociate with Doe. She ended her relationship with Doe.

Distraught over the break-up, Doe called Joel, whom he still regarded as his mentor. Joel told Doe that he touched Doe sexually while they were on The NOIZE trip, and that Joel had told Brian, who told Steve and Garrett. Joel said the group collectively decided not to tell Doe because they did not want him to "have a misplaced trust in church leadership."

The next morning, Garrett called Doe. Doe told Garrett what Joel said, including that the church decided to keep Joel on staff and send him to counseling. Garrett told Doe he should not tell his parents; it was Joel's story, and Doe should let Joel and his counselor decide when to tell Doe's parents. Doe agreed to keep the secret. Garrett met with Doe every six months or so after that.

Brian told Tom V., a minister at a different Houston church, what Joel had done and Brian's suspicion that Doe was not asleep but instead participated in a homosexual relationship. Tom contacted the pastor at the

5

church where Doe was a minister-in-training and told the pastor that Doe had been in a homosexual relationship. When Tom asked Doe about it, Doe said that he had been touched inappropriately in his sleep. Doe also disclosed the information to other pastors at his church, which had offered Joel a job as a youth counselor.

Doe eventually talked to his parents in 2014. Doe's parents confronted Joel. Joel told them the first time he grabbed Doe's penis was in July 2009, and he did something almost identical in July 2010. He also confirmed he told Brian in July 2009, and Garrett and Steve learned about his behavior in 2010 and sent him to counseling.

Doe's parents called Doe and asked if he knew it had happened twice. Doe did not know Joel touched him twice.

Doe's dad demanded a meeting with Steve, Garrett, and Brian. Brian did not attend. During the meeting, Doe's mom placed Doe on speaker phone because he was in a different city. Steve acknowledged the church mishandled the situation.

Two days later, Doe, his parents, and Doe's pastor met again with Garrett and Steve; Brian also attended. Doe's parents insisted the church fire Joel; Joel resigned in July 2014.

Although Garrett and Steve told Doe's parents they had reported the incident(s) to the police, Garrett eventually admitted there was no police report.

Doe and his family disassociated from the church, which had been the focus of their lives. Doe sought treatment for emotional distress, meeting with Dr. Debby Wade once or twice a month. Dr. Wade concluded that Doe suffered from "betrayal trauma," exacerbated by how Doe learned the full extent of what happened through a series of partial truths.

6

*The Lawsuit*

Doe filed a lawsuit in California against Joel and the church in January 2017. In June 2017, he filed a first amended complaint in which he alleged two causes of action against Joel: assault and battery and intentional infliction of emotional address. He alleged five causes of action against the church: negligence; negligent hiring, supervision, and retention; negligent failure to warn; negligent misrepresentation; and vicarious liability.

Joel, a resident of Texas, never appeared, and Doe obtained a default judgment against him.

The church moved for summary judgment in January 2019. It argued it did not know Joel was a sex offender before July 2009, and any claim arising out of the July 2010 incident was barred by the applicable statutes of limitation.

While the motion for summary judgment was pending, in March 2019, Doe filed a second lawsuit, alleging assault and battery in violation of Civil Code section 51.9, and sexual battery against Joel and the church.

In April 2019, the church demurred to the March 2019 complaint. It argued the second complaint was barred because a pending action between the same parties addressed the same claims. It also argued that statutes of limitations barred Doe's claims.

The court sustained the demurrer to the March 2019 lawsuit on the basis that it sought damages for claims that were the subject of the existing lawsuit. The court denied the motion for summary judgment but granted the church summary adjudication of Doe's claim for failure to warn. It also consolidated the two lawsuits.

In October 2019, the church moved to bifurcate the trial so that the court could address the statutes of limitations defense before the liability

phase. The court granted that motion. The same month, the church filed motions in limine, which Doe opposed. The first four motions in limine sought to exclude evidence of Joel's confessions, as well as statements by Steve, Garrett, and Brian discussing Joel's confessions. The fifth motion in limine also sought to exclude all of therapist Dr. Wade's opinions and testimony.

At a December 2019 hearing to address Joel's role in the case, the church's counsel told the court it planned to challenge some of Joel's statements at trial, particularly his alleged admissions to touching Doe's penis in July 2009. The church indicated it planned to supply evidence that Joel only admitted to touching Doe's leg in 2009.

The trial court expressed concern about admitting Joel's alleged hearsay statements: "If the plaintiff doesn't remember it, and the defendant who did it allegedly and admitted it[ ] is neither before the court nor deposed . . . whether he's unavailable or not really doesn't make any difference[.] [I]t's [that] he's never been deposed . . . by either party. . . . [W]e are going to go to trial on a case with multiple hearsay issues, multiple levels of hearsay issues." The court distinguished the issue from criminal cases where a victim could testify regarding what happened because Doe "under oath repeatedly slept through the whole thing, had no idea it occurred, so there is only one person in the world who knows what happened, in that hotel room. That is Joel [D]."

In March 2020, the parties filed briefs regarding the statutes of limitations, and in September the court conducted a bench trial on that issue.

The court issued a statement of decision in November 2020. In it, the court concluded that only the negligent misrepresentation claim was not time

8

barred and limited the claims to the July 2009 incident. It set trial on that claim for August 2021.

In August 2021, the trial court granted the first four motions in limine, excluding any evidence of Joel's confessions to assaulting Doe on two occasions. It granted the fifth motion in limine only to the extent that it related to Joel's confession and noted that Dr. Wade could testify and address hypotheticals.

The court based its decision to exclude the hearsay evidence primarily on section 352. It commented that the "bombshell nature of the allegation" meant the jury would probably react strongly, and it weighed that against the fact that alternatives to the hearsay confession were available but not pursued. The court also granted the motions in limine on hearsay grounds. It noted that Joel's location was known, but for reasons that appeared tactical, he was not deposed or scheduled to testify.

The parties subsequently stipulated to entry of judgment to appeal those orders. The court entered judgment on October 20, 2021, and Doe timely appealed.

DISCUSSION

A. Hearsay Principles

Section 1200 defines hearsay as a statement made by someone other than the witness testifying and offered to prove the substance of the matter asserted in the statement. Unless an exception applies, hearsay is not admissible. (§ 1200, subd. (b).) Hearsay evidence is generally considered untrustworthy or unreliable (*People v. Ayala* (2000) 23 Cal.4th 225, 268), so its admission raises concerns about the inability of the opponent to cross-examine the speaker to challenge its reliability.

9

We apply " 'the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question [citations].' " (*People v. Zavala* (2013) 216 Cal.App.4th 242, 249.)  Additionally, "[a]s rulings on the admissibility of evidence, [in limine rulings] are subject to review on appeal for abuse of discretion." (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269.)  "Accordingly, an in limine ruling to keep particular items of evidence from the jury is subject to reversal only where the trial court exceeded the bounds of reason.  [Citation.]  In other words, the appellate court will not disturb the trial court's decision unless the trial court exceed the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1481.)

B.  Evidence Code Section 1230

Section 1230 makes a hearsay statement admissible "if the declarant is unavailable as a witness, and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."[3]  A declarant is unavailable if "the court is unable to compel his . . . attendance by its process." (§ 240, subd. (a)(4).)  Doe contends that Joel is unavailable because California subpoenas cannot compel an out of state witness to testify (Civ. Proc. Code, § 1989 ["A witness . . . is not obliged

---

[3]     The parties do not dispute that Joel's confessions created a risk of making him an object of hatred, ridicule, or social disgrace.

to attend as a witness before any court . . . unless the witness is a resident within the state at the time of service"]; see *Berroteran v. Superior Court* (2022) 12 Cal.5th 867, 882, fn. 8 (*Berroteran*) [prospective witnesses unavailable because out of state residents are beyond reach of subpoena power]), and there is no dispute that Joel is somewhere in Texas.  Doe further contends that because section 240, subdivision (a)(4) does not expressly require the proponent of the evidence to demonstrate reasonable efforts to preserve testimony or obtain the witness's presence for trial, "a party's diligence in procuring a witness's testimony is irrelevant. . . ."

Courts have held that even though section 240, subdivision (a)(4) does not explicitly require a showing of reasonable diligence in procuring the presence of a witness in criminal matters, the Sixth Amendment right to confrontation nonetheless creates such a requirement.  (*People v. Herrera* (2010) 49 Cal.4th 613, 622-623; *People v. Ware* (1978) 78 Cal.App.3d 822, 830, 833-834 [explaining that the section 240, subdivision (a)(5) requirement must be read into section 240, subdivision (a)(4) because of the Sixth Amendment right to confrontation].)  However, there is no Sixth Amendment right to cross-examine witnesses in a civil matter.  (*People v. Sweeney* (2009) 175 Cal.App.4th 210, 221-222 [confrontation clause does not apply to civil commitment proceedings].)

The church cites case law explaining that section 240, subdivision (a)(5)[4] requires the proponent of hearsay evidence to exercise good faith and due diligence in procuring the witness's attendance at trial

---

4      Subdivision (a)(5) explains that " 'unavailable as a witness' means that the declarant is . . . [a]bsent form the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process."

11

before introducing the hearsay evidence. (*People v. Friend* (2009) 47 Cal.4th 1, 67-69 [discussing section 240, subdivision (a)(5)]; *People v. Roldan* (2012) 205 Cal.App.4th 969, 980-981 [discussing obligation to secure witness attendance and suggesting videotaping preliminary hearing testimony could protect right to confrontation]; *Gordon v. D & G Escrow Corp.* (1975) 48 Cal.App.3d 616, 624-625 [addressing requirements of section 240, subdivision (a)(5)].) Yet, section 240, subdivision (a)(4) does not contain a similar, explicit diligence requirement; it merely requires a showing that the witness is unavailable, meaning the court is "unable to compel his or her attendance by its process." (§ 240, subd. (a)(4).) The church does not explain why we should read section 240, subdivision (a)(4) to require diligence in procuring a witness's presence at trial before admitting hearsay statements. It focuses on whether Doe acted diligently to preserve Joel's testimony and argues Doe failed to undertake any effort to depose Joel. On this point, the church is correct. Doe does not claim that he undertook any effort to obtain Joel's presence, and Doe did not depose Joel.[5] But section 240, subdivision (a)(4) does not expressly require a party to preserve testimony or limit hearsay testimony to material recorded in anticipation of trial. Thus, as long as Joel was unavailable, i.e., beyond the reach of a California subpoena, his hearsay statements were admissible under section 1230.

Joel resides in Texas. Although California courts have personal jurisdiction over him, Joel is not a party to the action because a default judgment was entered against him. As an out of state witness, Joel is located beyond the reach of a California subpoena; thus, his attendance cannot be

---

[5] The Civil Discovery Act allows a party to confront and cross-examine witnesses by deposing them, then using the deposition transcripts at trial. (*People v. Orey* (2021) 63 Cal.App.5th 529, 559-560.)

compelled (Civ. Proc. Code, § 1989; see *Berroteran*, *supra*, 12 Cal.5th at p. 882, fn. 8), and he is unavailable. Accordingly, we conclude the court abused its discretion in excluding the evidence of Joel's confessions under section 1230. We conclude Brian's hearsay statements are admissible for the same reason. His statements constitute a second layer of hearsay, but those statements are also admissible under section 1230 because, like Joel, Brian lives in Texas and is therefore unavailable.[6]

### C. Evidence Code Section 1221

In addition to seeking to exclude Joel's confessions, the motions in limine sought to exclude hearsay statements by the church employees, including Steve and/or Garrett, to others. Doe contends that these second- and third-layer hearsay statements are admissible under the exception in section 1221, which provides that a statement offered against a party is not inadmissible hearsay "if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." This rule poses two issues: whether Joel's confession to touching Doe is a statement against the church's interest, and whether the church's words or conduct indicate that it believed Joel's confession.

---

[6] The church sought to exclude Joel's confessions to Doe in motion in limine No. 1, his confessions to Brian in motion in limine No. 2, and his confessions to Steve and/or Garrett in motion in limine No. 3. The church also sought to exclude Brian's hearsay statements about what Joel confessed to him in motion in limine No. 2. Because we conclude Joel's hearsay confessions are admissible under section 1230, we need not address the applicability of section 1222.

13

1. Vicarious Liability

Whether Joel's statement is against the church's interest depends on whether the church could be directly liable for Joel's conduct.[7] Doe argues that the church could be directly liable for Joel's conduct and, furthermore, that the court incorrectly barred the vicarious liability cause of action. The church contends that churches are not liable for the sexual misconduct of their employees, and it therefore is not vicariously liable for Joel's conduct. The trial court did not explicitly address this issue in its statement of decision.

In its respondent's brief, the church relies on case law from the 1980's, including *Rita M. v. Roman Catholic Archbishop of Los Angeles* (1986) 187 Cal.App.3d 1453, to argue a church is not liable for sexual misconduct by employees because an employer is only responsible for torts "committed within the course and scope of employment," and the abuse did not fall within the scope of employment. (*Id.* at p. 1461.) The court in *Rita M.* found that the plaintiffs "could not seriously contend that sexual relations with parishioners are either required by or instant to a priest's duties. . . ." (*Ibid.*; see also *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d 718, 724 (*Jeffrey E.*) [church not liable for alleged sexual misconduct of Sunday school teacher].)

However, the law has developed in this area since the holding in *Rita M.* The question of whether sexual assault is committed within the scope of employment does not simply ask whether such behavior is "required

---

[7] Doe separately argues that the court incorrectly barred the vicarious liability cause of action. Insofar as the vicarious liability claim relates to Joel's conduct in 2009, Doe is correct. The statutes of limitations do not bar causes of action arising out of that incident and, as we explain, respondeat superior is a viable theory of recovery.

14

by or instant to" identified duties. "California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests. [Citations.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296-297 (*Lisa M.*).) Instead, the proper question is whether there is a causal nexus between the employee's assault or other intentional tort and the employee's work. (*Id.* at p. 297.) This nexus is different than " 'but for' " causation; "the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be ' "inherent in the working environment" ' [citation] or ' "typical of or broadly incidental to the enterprise [the employer] has undertaken" ' [citation]." (*Id.* at p. 298.) Thus, we ask whether "the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that ' "as a practical matter are sure to occur in the conduct of the employer's enterprise." ' [Citation.] The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought."[8] (*Id.* at p. 299.)

Although the determination of whether an employee has acted within the scope of employment is typically a question of fact, if the facts are undisputed and there is no conflicting inference possible, this determination

---

[8]     *Jeffrey E.*, quoted by the church, is not far afield from this view. There, the court found the employer could not be vicariously liable for the alleged sexual misconduct of a Sunday school teacher because the connection between the teacher's duties and his wrongful conduct was too attenuated to find vicarious liability. (*Jeffrey E., supra*, 197 Cal.App.3d at p. 724, quoting *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139-140.) However, as we explain *post*, the connection between Joel's duties and the conduct here is not so attenuated.

becomes a question of law. (*Lisa M.*, *supra*, 12 Cal.4th at p. 299.) In *Lisa M.*, an ultrasound technician sexually assaulted a patient during what should have been a routine screening. (*Id.* at p. 296.) The patient named the employer hospital in the suit, arguing the hospital was vicariously liable for the battery because the employee committed the act within the scope of employment. (*Ibid.*) The Supreme Court concluded that the assault "did not originate with, and was not a generally foreseeable consequence of, [the physical] contact. Nothing happened during the course of the prescribed examinations to provoke or encourage . . . improper touching of plaintiff." (*Id.* at p. 303.) Instead, the assault "was the independent product of [the technician]'s aberrant decision to engage in conduct unrelated to his duties. In the pertinent sense, therefore, [the technician]'s actions were not foreseeable from the nature of the work he was employed to perform." (*Ibid.*)

An appellate court reached a different conclusion in *Samantha B. v. Aurora Vista Del Mar, LLC* (2002) 77 Cal.App.5th 85 (*Samantha B.*) under a different set of facts. There, an unlicensed mental health worker employed by an acute psychiatric hospital sexually assaulted three patients. (*Id.* at pp. 91-92.) He was permitted to be alone with female patients in their rooms, which were not visible from the nursing stations, for up to 20 minutes. (*Id.* at p. 93.) Mental health workers were tasked with helping vulnerable patients who had impaired judgment with daily living tasks, over an extended period. (*Id.* at p. 108.) The appellate court considered whether "the employment predictably create[d] the risk that employees [would] commit intentional torts of the type for which liability is sought." (*Id.* at p. 107.) It explained that "a sexual tort will be considered to be within the scope of employment if 'its motivating emotions were fairly attributable to work-related events or conditions.' [Citation.]" (*Id.* at pp. 107-108.) The court contrasted the

16

situation to the technician in *Lisa M.*, noting that there was ample evidence to support the conclusion that the worker became sexually involved with a patient " 'as a result of mishandling the feelings predictably created by the therapeutic relationship.' " (*Samantha B.*, at p. 108.)

Here, there is no dispute that Joel said he touched Doe while Doe slept.[9]  There is also no apparent dispute that the NOIZE Academy was part of the church's youth ministry, or that The NOIZE included dancers who traveled with their adult leader to out of state performances.  In the scope of his employment, Joel supervised the program, including overnight trips where he shared a hotel suite with a handful of boys.  Further, because of his role in the church, Joel spent a lot of time with Doe, for whom he was a mentor and to whom he was a friend.  This relationship was an outgrowth of Joel's employment with the church.

Because his employment required Joel to develop personal relationships with minors, and to travel with them and share hotel rooms with them, his job predictably created the risk he would molest one of them. Thus, the "tort was, in a general way, foreseeable from [his] duties." (*Lisa M.*, *supra*, 12 Cal.4th at p. 299.)

The church argues "[i]t is absurd to even consider that sexual misconduct upon a minor was required or instant to Joel's duties as a church employee" and that "sexual misconduct upon a minor is never a reasonable outgrowth of a church employee's duties and is therefore never a foreseeable outgrowth or characteristic of the enterprise. . . ." This misstates the standard for evaluating liability in this circumstance.  The question is not whether sexual misconduct is a "reasonable outgrowth."  Nor is the standard for foreseeability whether the conduct is reasonable.  The question is whether

---

[9]     The parties appear to dispute what part(s) of Doe's body Joel touched.

it is foreseeable that an employee whose job is to spend afternoons, evenings, and weekends developing relationships with the church's youth, and whose job requires the employee to travel on extended trips with minors, including sharing hotel suites with them, would engage in inappropriate physical contact with one of them. We conclude it is. Thus, Doe has a case for vicarious liability via the theory of respondeat superior. Accordingly, insofar as the vicarious liability claim relates to Joel's conduct in 2009, the statutes of limitations do not bar causes of action arising out of that incident, and the court's implicit exclusion of the vicarious liability cause of action was error. Moreover, because the church could be vicariously liable for Joel's conduct, statements by Brian, Steve, Garrett, and other church leadership are against the church's interest, clearing the first hurdle for admissibility.

2. Adoption or Ratification of Statement

Next we consider whether the church demonstrated that it adopted a belief in the truth of Joel's confessions. Doe proposes two categories of evidence for this purpose: the church's "disciplinary actions" against Joel, and the church leadership's statements (or non-statements) to Doe and others in the face of the allegations.

Section 1151 provides that remedial or precautionary measures taken " 'which, if taken previously, would have tended to make the event less likely to occur" are not admissible " 'to prove *negligence* or culpable conduct in connection with the event.' " (See *McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 670-674.) This can include disciplinary work suspensions (See, e.g., *City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, 783 [prohibiting discovery of police officer's suspension under section 1151 in action against city for battery by officer].)

18

The conduct that Doe identifies as evidence that the church believed the truth of Joel's confessions includes sending Joel to counseling, limiting Joel's access to youth, developing an employee training program to prevent future abuse, and firing Brian. These are all examples of subsequent remedial measures and are not admissible under section 1151.

However, statements church leaders made and their silence in the face of accusations from Doe's parents are admissible to demonstrate the church believed the truth of Joel's confessions. (See *Estate of Neilson* (1962) 57 Cal.2d 733, 746 [silence can be tacit admission in face of accusation]; *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 986, fn. 22 [lack of response to agist comment by supervisor may constitute ratification by authorized communicator].) The church's remaining argument is that any statements by church leadership would be double hearsay, made inadmissible by the inadmissibility of Joel's confessions in the first instance. However, having concluded those statements are admissible under section 1230, they pose no barrier to including the statements responding to those confessions.

D. Evidence Code Section 352

Section 352 provides the court discretion to exclude admissible evidence if its probative value is outweighed by the probability that its admission will create a substantial danger of undue prejudice. "The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) We review a trial court's finding on the admissibility of evidence for an abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267.) Even if relevant, evidence is subject to exclusion under section 352 if its probative

19

value is substantially outweighed by its prejudicial effect. (*People v. Cardenas* (1982) 31 Cal.3d 897, 904-905.)

"The prejudice which exclusion of evidence under [section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in [section 352] applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) " 'In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 286.)

The evidence of Joel's confession is prejudicial because it damages the church's case, and the subject matter of the evidence may evoke an emotional response because the nature of the tort at issue here is sexual abuse. The trial court explained that the "bombshell nature of the allegation" would likely cause a strong reaction from jurors. The court weighed that against its belief that alternatives to the hearsay confession were available, but Doe did not pursue them. This was error. Evidence is unduly prejudicial if it would evoke "an emotional response that has very little to do with the issue on which the evidence is offered." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 597.) Here, Doe does not seek to introduce the confessions to inflame the emotions of the jury, and the likely emotional response is a reaction to the

alleged conduct, which is central to the causes of action against the church. Joel's confessions and the church's responses to them are substantively necessary to the causes of action.

Although there is no explicit requirement that the proponent of hearsay evidence demonstrate he or she exercised diligence to either preserve testimony or to procure the presence of a witness at trial if the court cannot compel attendance by its process (see § 240, subd. (a)(4)), the court's concerns about the reliability of the admissible hearsay evidence are understandable, particularly given that Doe had no personal memory of what occurred. However, in this matter, there is a myriad of witnesses who will testify regarding what Joel reported happened in the immediate aftermath of his alleged conduct, as well as what Joel said years later, including Doe, Doe's parents, Steve, and Garrett. Their testimony will test the nature, quality, and reliability of Joel's confessions. Thus, while we understand the court's concerns, we conclude that its treatment of the legitimately inculpatory effect of Joel's confessions was an improper basis to exclude the evidence under section 352.

Furthermore, the exclusion of all evidence related to Joel's confessions clearly prejudiced Doe's case because, as the court and parties recognized, there could be no case without that evidence: "Had the evidence at issue in Motions *in Limine* 1-5 been admitted, there is at least a reasonable chance, more than an abstract possibility, that Plaintiff could secure a verdict in his favor."

DISPOSITION

The judgment is reversed. The matter is remanded for further proceedings consistent with this opinion. The plaintiff is entitled to costs on appeal.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.